REGAN, Judge.
Plaintiff, the Orleans Parish School Board, instituted this suit against the defendants, Adrian Campbell Manson, widow of James J. Manson, Lucille Manson, wife of Steve C. Tate and James J. Manson, Jr., requesting the rendition of a declaratory judgment decreeing that it has a merchantable title to Lots 13 and 14 of Square 5 in Tunisburg, located in Algiers, Louisiana, and that defendants have no interest in this property donated by the late James J. Manson to the City of New Orleans for public school purposes.
Defendants responded to this suit for a declaratory judgment and in their answer denied plaintiff’s ownership and prayed that the court order plaintiff to reconvey the lots to them, since the city and its transferee, the School Board, failed to comply with the condition of the onerous donation, that is, that the lots be used for public school purposes, and, therefore, the donation should be revoked or dissolved.
From a judgment in favor of the defendants, revoking the donation made by James J. Manson, declaring null and void the transfer by the city to the School Board [1] and recognizing the defendants as the owners of the property and sending them into possession thereof, plaintiff has prosecuted this appeal.
The pertinent facts and documents upon which the declaratory judgment of the trial court was predicated are all contained in a stipulation entered into between the respective litigants. Summarized, these facts are as hereinafter set forth:
On January 9, 1912, by notarial act, James J. Manson, in consideration of the payment of $1,550 cash, conveyed to the City of New Orleans Lots 8, 9, 10 and 11 and part of Lots 7 and 12 in Square 5 of Tunisburg subdivision. In addition to the conveyance, and purportedly “in consideration of the purchase by the City of the above decribed property” for the price and sum mentioned, Manson donated to the city “to be used for public school purposes” Lots 13 and 14 in Square 5. Subsequently, on July 5, 1955, by notarial act, the city transferred these lots to the Orleans Parish School Board, the plaintiff herein.
Defendants, Mrs. Adrian Campbell Manson, Mrs. Lucille Manson Tate and John J. Manson, Jr., are, respectively, the widow, daughter, and son of John J. Manson, who died on May 12, 1952. By virtue of the judgment of possession rendered in the Succession of John J. Manson, Mrs. Adrian Campbell Manson has been recognized. as the decedent’s widow in community and Mrs. Lucille Manson Tate and John J. Manson, Jr., have been recognized as his surviving children and sole heirs, and as such, have been placed in possession of his entire estate.
The decedent married Adrian Campbell on June 1, 1892 and the property described above was acquired by the decedent on September 4, 1908, during the existence of the community of acquets and gains and *85 with community funds. While the property was not inventoried or mentioned in the Succession of John J, Manson, it is conceded that at the time the donation was made that it constituted a part of the community of acquets and gains existing between the decedent and Adrian Campbell.
The property acquired by the City of New Orleans from John J. Manson was obtained because of the necessity of the removal from Lots 5, 6, 12, 13, 14 and 15 of Square 1, Tunisburg subdivision, of the Lawton White School, so as to make that site available to the United States Immigration Station for the expansion thereof. The old site was conveyed by the city to the federal government for the sum of $2,050, plus the cost of removing and renovating the buildings, and the resulting sum was then used to acquire eight lots to which the buildings would be removed. The lots acquired were those conveyed by Manson for $1,550, to which the original Lawton White School was transferred and Lots 13 and 14 of the Streuby subdivision, which were acquired from Mrs. Sophia Lullman, widow of Ferdinand Streuby, for the remaining $500, to which one of the buildings was removed for the establishment of a colored school. To reiterate, Manson donated two additional lots for the site of the Lawton White School.
This school was continued in operation for about 14 years or until the year of 1926, and thereafter the property was rented and the funds were used for school purposes until 1953, at which time the buildings were condemned and demolished and the school board advertised its desire to dispose of the property by sale. This suit for the rendition of a declaratory judgment was provoked as a result of the defendants’ demand for the return of the donation of Lots 13 and 14, when they were informed of the condemnation and demolition of the buildings and the contemplated sale thereof by the school board. To again reiterate, the lower court rendered a declaratory judgment in favor of the defendants, revoking the donation made by John J. Manson, declaring null and void the transfer from the City of New Orleans to the school board, and recognizing the defendants as owners of the property and putting them into possession as such.
 At the very inception of this case, we were concerned as to whether the controversy entitled the litigants to proceed under the Uniform Declaratory Judgments Act.[2] This pertinent question, in view of the existing jurisprudence, was not raised by the litigants either in the lower court or in this court. However, during oral argument, one of the members of this court expressed doubt that this'case was encompassed by the act[3] in view of its restricted use in our procedural law as set forth by the jurisprudence of this state.
The most recent pronouncement[4] by the Supreme Court of Louisiana was most emphatic in rationalizing that:
“The test to be employed in determining whether a case is properly one for declaratory relief has been clearly defined in our jurisprudence. It has been decided that the statute may not be invoked unless there is a justiciable controversy. (Tugwell v. Members of Board of Highways, 228 La. 662, 83 So.2d 893 and State v. Board of Supervisors, etc., 228 La. 951, 84 So.2d 597) and, further, that use of the act is limited to matters in which out own procedural law does not provide the party seeking relief with an adequate *86 remedy. Burton v. Lester, 227 La. 347, 79 So.2d 333; see also Smith v. Smith, 230 La. 509, 89 So.2d 55 and Theodos v. Bossier City, 232 La. 1059, 95 So.2d 825.” (Emphasis added.)
We have no doubt that this case poses a justiciable controversy between the plaintiff and defendants, but it seems clear that the dispute possesses no unusual characteristics which could not be adjudicated by virtue of the institution by either litigant of a real action to determine ownership of the property.
In Burton v. Lester, supra, the Supreme Court, having observed that the frequent use of the Uniform Declaratory Judgments Act in this state made it imperative that it elucidate upon its views respecting the general application thereof, set forth the policy by which the district courts of this state were to be guided. In doing so, it rationalized thus:
“The statute is undoubtedly a most valuable supplement to the cumbersome common law procedure but its worth to a State like Louisiana having a Code of Practice which has worked satisfactorily and efficiently for over 80 years, remains to be proven. At any rate, we do not believe that the statute should be employed as a substitute for the well-defined actions provided for in our Code of Practice or those which have been established by jurisprudence unless, by reason of the special circumstances of the case, the codal procedure does not furnish an adequate remedy.
“ * * * Hence, we must perforce construe and apply the act according to its own terms, giving due regard to our established procedure so that it may take a useful and proper place therein. By adopting this course, we deduce, as we have stated above, that the Act is merely an adjunct to the civil procedure outlined in our Code of Practice of 1870 and should not be substituted therefor, save upon a showing by the litigant seeking the declaratory relief that the ordinary or summary proceedings recognized in the law and jurisprudence do not avail him an adequate remedy. * * *" [227 La. 347, 79 So.2d 335]
The litigants, as we have observed here-inabove, have made no showing whatsoever that the ordinary proceedings recognized' both by the law and the jurisprudence of this state do not avail them of an adequate remedy. Indeed it appears from a mere statement of the case that the litigants, possess a complete and actually more effective remedy in the well-defined actions, provided for in our Code of Practice and the jurisprudence.[5]
It is evident that the use of the declaratory judgment procedure in this instance has prolonged the litigation rather than, as is its stated purpose, simplified it. The result hereof would not have been possible if the ordinary procedure provided by the-Code of Practice and the jurisprudence had; been invoked by either litigant.
The judgment appealed from is annulled' and set aside and the petition of the plaintiff is dismissed.
Judgment annulled and petition dismissed..

. On July 5, 1955, the City of New Orleans transferred the property with which this litigation is concerned to the Orleans Parish School Board, pursuant to the requirements of Article IV, Section 12 of the Constitution of 1921, LSA. When the donation was made in the year of 1912, the City of New Orleans administered properties used for public school purposes.

. LSA-R.S. 13:4231 et seq.

. The right to determine on its own motion whether a suit for a declaratory judgment is properly one for such relief applied to appeal as well as nisi prius tribunals, the broad discretionary powers conferred by LSA-R.S. 13:4231 being vested in all courts of record acting within their respective jurisdictions. See also LSA-R.S. 13:4236.

. Orleans Parish School Board v. City of New Orleans, 1959, 238 La. 748, 116 So.2d 509, 511.

. It now appears that legislative intervention is necessary' if the problem created is to be corrected, that is, by amending the Declaratory Judgments Act to provide that the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The rule as it now stands is objectionable because it imposes an unnecessary hardship both upon the litigants and the courts, who, in this instance, are compelled to try a case twice.