132 So.2d 885

ORLEANS PARISH SCHOOL BOARD

v.

Mrs. Adrian CAMPBELL, Widow of
James J. MANSON et al.

Nos. 45537, 45539.

June 29, 1961.

Rehearing Denied Oct. 4, 1961.

Phelps, Dunbar, Marks, Claverie & Sims, Charles M. Lanier, New Orleans, for defendants-appellees-relators for Campbell and others.

Samuel I. Rosenberg, New Orleans, for respondent, Orleans Parish School Board.

McCALEB, Justice.

This suit was brought under the Uniform Declaratory Judgments Act, R.S. 13:-4231–46, to determine whether plaintiff, Orleans Parish School Board, has a merchantable title to two certain lots of land it acquired from defendants' ancestor for public school purposes. The defendants, who are the surviving widow and heirs of the donor of the lots, James J. Manson, deny the validity of plaintiff's title and reconvene for a judgment declaring the rescission of the donation by reason of plaintiff's failure to fulfill the condition imposed thereon by the donor.

The facts of the case, which were stipulated by the parties, are as follows:

In 1912 the United States, being desirous of enlarging its immigration station situated in the Fifth Municipal District of New Orleans (commonly called Algiers), purchased, through one Lawton, certain lots owned by the City of New Orleans in Square 1 of the Tunisburg Subdivision by conventional conveyance for the sum of $2050 plus the cost of moving school buildings thereon to a new site. The City had maintained the Lawton White School on this property and sought to remove the school to other land within the subdivision provided it could acquire another site with

the sum it obtained from the lots sold to the United States. Pursuant to this purpose, the City bought two lots from one Streuby's widow for $500 and four lots from James J. Manson for $1,550, all within Square 5 of the subdivision. Manson, who owned considerable property in the subdivision and was interested in developing it, donated in his conveyance of the four lots to the City, two additional adjacent lots, Nos. 13 and 14, the subject of this litigation. This portion of the notarial act recites [126 So.2d 88]:

"And the said James J. Manson did further declare that, in consideration of the purchase by the City of New Orleans of the above described property for the price and sum mentioned therein, he does, by these presents, cede, donate, abandon, set over and deliver, without any cost whatsoever to the City of New Orleans, to be used for public school purposes, the following * * * property, to-wit * * *."

Upon its acquisition of the property in 1912, the City established a colored school on the Streuby property and moved the Lawton White school on the six lots acquired from Manson. This school was operated until 1926, when it was closed by the School Board and remained vacant until 1939, at which time the building was rented for $10 per month and the proceeds applied to the general operating expenses of the Board. It was rented for this nominal

monthly sum until 1953, when the building was condemned and demolished. Since that time, the lots have remained vacant and the School Board has advertised them for sale.

James J. Manson died in 1952 and the defendants were placed in possession of his succession shortly thereafter. Upon learning, defendants made formal demand upon ing, defendant made formal demand upon the City and the School Board (which had acquired title to the property in 1955 from the City in conformity with the provisions of Section 12 of Article 4 of the Constitution, as amended) for a revendication of the two lots because of failure to comply with the condition of the donation that the property be used for public school purposes.

The School Board then filed this suit to have its title declared merchantable and not subject to divestiture. In answer, defendants resisted the demand and reconvened for a declaration upholding their claim for revendication.

After a trial in the district court, defendants' reconventional demand for rescission of the donation was sustained and it was declared that the lots should be returned to them. Plaintiff appealed to the Court of Appeal, Fourth Circuit, where on first hearing the proceeding was dismissed, the Court resolving, ex proprio motu, that the case was not properly one for declaratory relief because the parties were afforded

an adequate remedy by ordinary proceedings under our law. On rehearing, the original judgment was reversed on the ground that, since the plaintiff was seeking to judicially determine its right to sell the property and use the proceeds, a proper case for declaratory relief was presented notwithstanding that other remedies were available.[1]

On the merits of the case the Court of Appeal deduced that Manson's donation of the lots to the City was onerous in that the land was subjected to the charge that the donee use it for public school purposes. However, although it resolved that the School Board was without right to sell or rent the lots, the Court was of the opinion that the Board's failure to continue the use of the property as a school did not work a forfeiture of the donation and that it was still vested with authority to physically utilize it as a playground, athletic field,

library, or for any other school purpose. It therefore reversed the ruling of the district court and entered a limited judgment declaring merely that the School Board could not sell the lots even though it would use the proceeds of the sale generally for school purposes. See Orleans Parish School Board v. Manson, La.App., 126 So.2d 82. Upon the finality of this decree both parties applied for certiorari. The applications were granted and the case has been argued and submitted for our decision.

▆▆▆ The School Board contends initially that the Court of Appeal erred in holding that Manson's transfer of the two lots was an onerous donation. Its counsel professes that the conveyance was either a sale or a remunerative donation because it is recited in the notarial act that the two lots are donated " * * * in consideration of the purchase by the City of New Orleans of the above described property . * * * " i. e.,

<hr>

1. In view of our decisions in Burton v. Lester, 227 La. 347, 79 So.2d 333 and Orleans Parish School Board v. City of New Orleans, 238 La. 748, 116 So.2d 509, it is manifest that the holding of the Court of Appeal on rehearing was incorrect. Since plaintiff had an adequate remedy by employment of the jactitory action (see Board of Trustees of Ruston Circuit, etc. v. Rudy, 192 La. 200, 187 So. 549 and Board of Trustees of Columbia Road Methodist Episcopal Church v. Richardson, 216 La. 633, 44 So.2d 321), the proceeding for declaratory relief should not have been entertained. Nevertheless, we feel obliged at this time to take jurisdiction of the case because of the enactment of the Lou-

isiana Code of Civil Procedure which went into effect on January 1, 1961 and which, being remedial legislation, is to be applied retrospectively. Article 1871 of that Code enlarges the scope of declaratory judgments and specially provides that "No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." We are told by the editors in their comments on the text that "The specific purpose of the additional language in this Article is to work a legislative overruling of Burton vs. Lester, supra."

Lots Nos. 7, 8, 9, 10, 11 and 12, for the price of $1550.

There is no merit in this contention. Nothing was given by the City for the lots in question nor was any service performed by it from which it could be deduced that the donation was remunerative. On the contrary, the language of the conveyance is explicit and discloses a donation by Manson of the two lots with a charge upon the donee that they are to be used for public school purposes. Under our law (see Article 1523 of the Civil Code), this is an onerous donation which is subject to revocation or dissolution on account of the non-performance of the conditions imposed by the donor. See Article 1559 of the Civil Code.

■ Counsel further asserts that, if the donation be regarded as onerous, the School Board may nevertheless sell the property without violating the condition of the donation because the proceeds of the sale will be used for school purposes.

The Court of Appeal properly rejected this contention. The notarial act declares that the lots are to be used for public school purposes. If the lots are sold by the School Board they are no longer available to it for the use specified. The application of the proceeds of a sale to general school purposes would not constitute a compliance with the condition placed on the donee.

Thus, it clearly appears that the School Board has no valid grounds for the decla-

ration it seeks, i. e., that its title to the lots is merchantable and not encumbered by the charge placed thereon by the donor. There remains, then, only for determination the question of defendants' right under their reconventional demand to have the donation rescinded because of the School Board's failure to comply with the condition of the donation.

■ The Court of Appeal, although it did not mention defendants' reconventional demand in its judgment, effectively denied it when it reversed the judgment of the district court and declared only that the School Board was not legally entitled to sell the lots to third persons. In the body of its opinion the Court said "All we are called upon to decide here is whether the School Board can part with title and use the proceeds generally for the public schools". We think it is evident from this statement that the Court did not feel that defendants' right to have a rescission of the donation was properly before it.

Defendants assert that the Court of Appeal's disposition of their claim was erroneous in view of R.S. 13:4238 which authorizes a court to grant "Further relief based on a declaratory judgment or decree * * * whenever necessary or proper."

This contention is well taken. Defendants' claim for revocation of the donation was properly pleaded in reconvention as it was responsive to issues presented by the

petition of the School Board to have its title to the property declared merchantable "and not subject to divestiture by defendants."

■■ Since the School Board has long ago discontinued the use of the property for school purposes, the school building having been condemned and demolished in 1953, it would appear that the district judge was correct in holding that the defendants were entitled to have the donation revoked for noncompliance with the condition imposed by the donor.

However, the School Board contests defendants' claim for a declaration of the right of revendication. It contends that the donation is to be regarded as a dedication by Manson of the property to the public use, having been accepted as such by the Mayor of the City in accordance with the city ordinance attached to the act of transfer and that, therefore, it is not subject to revocation because the act does not contain an express stipulation of the right of reversion.[2]

In support of this proposition, counsel for the Board relies on Jaenke v. Taylor, 160 La. 109, 106 So. 711 and Wilkie v.

Walmsley, 173 La. 141, 136 So. 296 and also cite the concurring opinion of Chief Justice O'Niell in Board of Trustees of Ruston Circuit, etc. v. Rudy, 192 La. 200, 187 So. 549.

Jaenke v. Taylor and Wilkie v. Walmsley were suits involving dedications of property for street purposes and the question was whether the land would revert to the original owners upon the discontinuance of the public use. It was held, in line with other authorities pertaining to dedications, that the property does not revert to the original owner in the absence of an express reservation contained in the act of dedication to that effect.

Those two cases were cited by the Court in Board of Trustees of Ruston Circuit, etc. v. Rudy, supra, as authority for its holding therein that a donation of land for religious purposes was not subject to revocation upon the cessation of the designated use, in the absence of an express stipulation by the donor that the property would revert in such event. Chief Justice O'Niell concurred in the result reached in the case on the ground that the donor did not impose any condition on which the title

---

2. Moreover, counsel for the Board contends in his argument and brief that defendants' right to rescind the donation is barred by prescription of either five or ten years (provided by Articles 2221, 3542 and 3544 of the Civil Code) from the date the donee ceased to fulfill its obligation to use the property for school purposes.

This point cannot be considered as prescription has never been specially pleaded by the School Board as a defense. See Articles 3464, 3465 of the Civil Code and Article 927, Louisiana Code of Civil Procedure.

was to remain in the donee. However, he disagreed with the majority pronouncement that an act of donation must contain an express stipulation in order for the donor to sue for its revocation for non-fulfillment of the conditions, stating that the Articles of the Civil Code applicable to donations inter vivos (Articles 1523 and 1559) did not require such a stipulation as a prerequisite for the exercise of the right of rescission and that the cases cited as authority for the majority view (Wilkie and Jaenke) involved dedications of land for public use and not onerous donations.

The controlling authority on this subject is Board of Trustees of Columbia Road Methodist Episcopal Church v. Richardson, 216 La. 633, 44 So.2d 321, 325. In that matter, which involved the revocation of a donation of land for church purposes by reason of the donee's discontinuance of the use for which the land was donated, we reconsidered our ruling in the Rudy case and refused to follow it, stating:

"This holding is not only at variance with our civil law, as hereinabove demonstrated, but it is also not supported by the authorities relied on by the author of the opinion * * *."

Counsel for the School Board argues that the effect of the Richardson case is to dispense with the requirement of a reverter stipulation only where property is

transferred to a person or private corporation and that, where land is donated to a public body for a public purpose, it is a dedication to public use and the rule of the Wilkie and Jaenke cases still obtains.

■ This position is not tenable. Although similar in their practical operation, dedications for public use and donations to public subdivisions or corporations conditioned upon a particular public use are not governed by the same legal rules. A dedication may be implied as well as express,[3] and the dedicated property becomes vested in the public. Livaudais v. Municipality Number Two, 16 La. 509. Hence, it is considered to be irrevocable in the absence of an express reservation on the part of the former owner of the right of reversion.

The donation inter vivos, on the other hand, transfers the title to the donee, even though the donation is conditioned on a particular public use and it must conform to the provisions of the Civil Code on the subject in order to be effective. When the donor has imposed charges upon the donee there is no necessity for an express stipulation of a reverter clause as the Civil Code (Article 1559) vests in the donor the right to claim a revocation for failure of the donee to comply with the conditions of the gift. This is the rationale of our decision

3. See Arkansas-Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229

for a discussion of the requirements and effects of dedications to public use.

in the Richardson case and Chief Justice O'Niell's concurring opinion in the Rudy case, where he concluded that, under the Articles of the Civil Code, " * * * the resolutory condition is implied if a donation is made subject to a condition imposed upon the donee". [192 La. 200, 187 So. 551.]

The circumstance that the donation is in favor of a political corporation and is conditioned upon a particular public use does not affect the right of rescission given the donor under the Civil Code.

The judgment of the Court of Appeal is annulled and set aside and it is now ordered that the judgment of the district court be reinstated and affirmed.

HAMLIN, Justice (dissenting).

I am compelled to dissent from the majority opinion.

Primarily, it is my view that in this matter there are exceptional circumstances not similar to any involved in the authorities cited in the majority opinion. The instant case involves a sale, coupled with a purported donation.

I am of the opinion that the sale and transfer of Lots Nos. 7, 8, 9, 10, 11 and 12, and the purported donation and transfer of Lots Nos. 13 and 14, on January 9, 1912, are so enmeshed that the entire act is one of sale. If we omit the word "donate"

(which I believe is superfluous and was intended as such, as will be hereafter shown), we have:

"And the said James J. Manson did further declare that, *in consideration* of the purchase by the City of New Orleans of the above described property for the price and sum mentioned therein, he does by these presents *cede*, * * * [donate], *abandon, set over and deliver*, without *any cost* whatever to the City of New Orleans, to be used for public school purposes, the following described property, to-wit:" (Emphasis mine.)

Here follows a description of Lots Nos. 13 and 14.

If I may be pardoned the use of a homely expression, Lots Nos. 13 and 14 were "lagniappe."

I am of the further opinion that the words "to be used for public school purposes" were not intended to be a condition, and were not in fact a condition imposed upon the purchaser by James J. Manson, the vendor, as contemplated by Article 1559 of the Revised Civil Code.

The so-called or purported donation was not made on the condition that the property *shall be* used for public school purposes. There are no words in the portion of the sale quoted, supra, from which it could be deduced that James J. Manson in-

tended the expression or phrase "to be used for public school purposes" to be a condition imposed on the purported donee.

The history of this case, as evidenced by the following facts, confirms this conclusion:

The school was closed in June, 1926. James J. Manson died in May, 1952—about 26 years after the school was closed—and made no complaint during his life-time.

Mr. Manson did not act after the school was closed, because he knew that it was his intention in January, 1912, to divest himself entirely of the lots in question; he desired the school so that it would aid him in developing his tract of land. He had been developing his tract from the date of the sale in January, 1912—fourteen years before the school was closed in June, 1926—and was completely indifferent when the school was closed, being entirely satisfied. After his death, and when the property had gone up in value, this stale claim to the property was made by his widow and heirs, the defendants herein.

I believe that the following holding of this Court, in the case of Lafitte, Dufilho & Co. v. Godchaux, 35 La.Ann. 1161, is applicable to the instant matter:

"The genius of our law does not favor the claims of those who have

long slept on their rights, and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement.[1]

"In the case of Bennett vs. Mechanics' and Traders' Bank, 34 Ann. 150, we had occasion to discuss this principle and to take an extended review of our jurisprudence on this question, and we therein enforced this rule as a bar to recovery on a similarly stale demand. Among the numerous authorities which we had occasion to examine, we find two decisions of our Court which are quite in point in this case. Dupre vs. Splane, 16 La. 51; Starr vs. Zacharie, 18 La. 517.

"We are very clear and positive in our belief, that if the stock in question had not greatly increased in value, since the date of the transactions which plaintiffs now seek to disturb and annul, this suit would never have found its way to the temple of justice, and that a demand, based on the subsequent depreciation of the same, would have been strenuously resisted by plaintiffs.

---

1. The foregoing philosophy of this Court has been approved in Sun Oil Co. v. Roger, 1960, 239 La. 379, at page 386, 118 So.2d 446, at page 449, and Fried v. Bradley, 1950, 219 La. 59, at page 81, 52 So.2d 247, at page 255.

"The impression made on our minds by the evidence, as well as all the equities in this case, compels us to differ with our learned brother of the District Court."

Being of the opinion that the Orleans Parish School Board has a merchantable title to the two lots involved herein, I respectfully dissent.