700 So.2d 870 (1997)
ORLEANS PARISH SCHOOL BOARD
v.
CITY OF NEW ORLEANS and New Orleans Land Company.
No. 96-CA-2664.
Court of Appeal of Louisiana, Fourth Circuit.
September 3, 1997.
Rehearing Denied November 14, 1997.
*871 Robert M. Rosenberg, Larry C. Becnel, Polack, Rosenberg, Endom & Riess, New Orleans, for Plaintiff/Appellant Orleans Parish School Board.
Charles Emile Bruneau, Jr., William T. Tête, Medo & Tête, New Orleans, for Defendant/Reconvenor/Appellee Hedwig, Inc.
ARMSTRONG, Judge.
This case involves a donation of immovable property made decades ago to the City of New Orleans as the predecessor in interest to the Orleans Parish School Board. The plaintiff-appellant School Board, which apparently wishes to sell the property at issue, seeks a declaratory judgment that, because of prescription of the donor's right of revocation, or by operation of certain statutes, its ownership of the property at issue is not subject to the conditions of the Act of Donation. Defendant-reconvenor-appellee Hedwig, Inc., as the successor in interest to the donor, New Orleans Land Company ("NOLC"), seeks to revoke the donation on the ground that the School Board is no longer using the property at issue in accordance with the conditions of the donation. The trial court held that the right of revocation is not prescribed, that the property at issue is still subject to the conditions of the Act of Donation, and that the donation should be revoked and the property at issue returned to Hedwig as the successor in interest to NOLC. We find that the trial court was not clearly wrong or manifestly erroneous in holding that the right to revocation is not prescribed, and that the property at issue is still subject to the conditions of the Act of Donation, but we find that the property at issue is still being used by the School Board in accordance with the conditions of the Act of Donation, so we hold that the donation cannot be revoked at this time.
In 1913, the President of NOLC wrote to the Mayor of the City of New Orleans agreeing to donate the property at issue, which is a tract in Lakeview, to the City. The next year, the Lakeview School was built on the site by the School Board which began to use the building as a school. In 1929, it was discovered that no Act of Donation of the property at issue had ever been executed. *872 Thus, an Act of Donation was drawn up, executed and recorded in 1929. NOLC quitclaimed all its property to Hedwig in 1967, at which time NOLC was dissolved. In 1973, the City put title to the donated property in the name of the School Board. After the 1984-85 school year, the School Board ceased to use the Lakeview School building as a school. However, the School Board did make use of the building for an administrative center from 1985 to 1993. In 1993, the School Board ceased to use the building as an administrative center. However, from 1993, the School Board did make use of the building for storage of School Board property and continues to do so.
It is uncontested that the property at issue was donated in 1929. However, the School Board and Hedwig contest the interpretation of the Act of Donation with respect to the condition placed upon the donation. The Act of Donation at one point states that the property is "to be used for school purposes" and at another point states that it is "to be used for public school purposes." The School Board interprets this to mean that the property must be used specifically for a school. The School Board argues that it ceased to use the property for a school in 1985, that the prescriptive period for the right to revoke a donation is five years and that, therefore, the right to revoke prescribed in 1990. The present action was filed in 1996. Hedwig argues that the phrases "school purposes" and "public school purposes" are broad enough that they do not require an actual school to be on the donated property and that the use of the property as a School Board administrative center until 1993 is a school purpose that complies with the condition of the donation. Thus, Hedwig contends that the right to revocation would not prescribe until 1998. The trial court resolved this issue in favor of Hedwig and stated in its Reasons for Judgment that "the phrase public school purposes is indeed ambiguous and would include any general goal, aim, need or interest of the Orleans Parish School Board."
The law applicable is set out in the Civil Code. "The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals." La.Civ.Code art. 1527. "Donation [Donations] inter vivos are liable to be revoked or dissolved on account of the following causes:
... 3. The non-performance of the conditions imposed on the donee." La.Civ.Code art. 1559. "But if the conditions be potestative, that is, if the donee is obliged to perform or prevent them, their non-fulfillment does not, of right, operate a dissolution of the donation; it must be sued for and decreed judicially." La.Civil Code art. 1566. "An action of revocation or rescission of a donation on account of the non-execution of the conditions imposed upon the donee, is subject only to the usual prescription, which runs only from the day that the donee ceased to fulfill his obligations." La.Civ.Code art. 1567. See generally Swaim and Lorio, Louisiana Civil Law Treatise: Successions and Donations § 9.12 (1995).[1]
As the trial court noted, and as the parties appear to agree, the outcome of the prescription issue turns on the interpretation of the phrase "school purpose" in the *873 Act of Donation. The issue of whether or not the language of a contract is ambiguous is an issue of law subject to de novo review on appeal. Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., No. 93-2364 (La.App. 4th Cir. 10/2/96), 681 So.2d 1292, writ denied, No. 96-C-2625 (La. 12/13/96), 692 So.2d 1066. We agree with the trial court that the phrase "school purposes" is ambiguous as to whether or not the use of the donated property for an actual school is required. Thus, it was necessary for the trial court to find, as a matter of fact, the proper interpretation of the phrase "school purposes." "In the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." Grabert v. Greco, 95-1781 (La.App. 4th Cir. 2/29/96), 670 So.2d 571, 573. Consequently, we must determine whether the trial court was clearly wrong or manifestly erroneous in finding that the phrase "school purposes" does not require the use of the property for an actual school. Of course, in doing so, we may not simply substitute our own view of the evidence for the trial court's view and we may not disturb the trial court's finding of fact so long as it is reasonable. E.g., Syrie v. Schilhab, No. 96-1027 (La. 5/20/97), 693 So.2d 1173; Stobart v. State, DOTD, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Although the case was submitted to the trial court by means of depositions, stipulations and documentary evidence, rather than live testimony, that does not alter the clearly wrong/manifestly erroneous standard of review. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 1/14/94), 630 So.2d 706, 710; Davis v. Puryear, 95-1637 (La.App. 4th Cir. 5/1/96), 673 So.2d 1298, 1302, writ denied, 96-1380 (La. 10/4/96), 679 So.2d 1381.
We also note that the decision in Orleans Parish School Board v. Manson, 241 La. 1029, 132 So.2d 885 (1961), does not provide a great deal of guidance in the factual context of the present case. In Manson, two lots had been donated "to be used for public school purposes," and a school had been located upon them for some years. Later, however, the School Board closed the school and rented out the premises to a third party for a small sum. Still later, the school building was condemned and demolished and the vacant lots were put up for sale by the School Board. The Supreme Court held that sale of the lots was not a use for which they had been donated even if the proceeds of the sale would be used for public school purposes. The Supreme Court also held that, as the School Board had ceased using the property for school purposes, the donation should be revoked. (The Supreme Court declined to consider the issue of prescription because it had not been pleaded.)
The present case does not present facts nearly so extreme as those of the Manson case. The School Board in the present case did not lease the property to a third party, has not demolished the building on the property, and has continued to use the property for its own purposes albeit not as an actual school. Whereas the Manson case involved a complete lack of School Board use of the property at issue, the present case involves different types of School Board use of the property. Nor does the School Board in the present case argue that it may sell the property at issue so long as the donation is subject to revocation. Instead, in the present case, the School Board argues that, because it stopped using the property at issue for an actual school in 1985, the right to revoke is prescribed, and, with the School Board's title no longer subject to revocation, the School Board may sell the property with impunity.
We now turn to the issue of whether the trial court was clearly wrong or manifestly erroneous in finding that the phrases "school purposes" and "public school purposes" do not require that the property at issue be used as an actual school. The School Board's argument that the trial court erred as to this issue is based upon certain documents (the NOLC President's letter to the Mayor, a City ordinance regarding that letter, certain NOLC minutes regarding the property at issue, and a report of the City's Commissioner of Property) all of which date from 1913 and all of which suggest that, in 1913, the expectation was that a school would be built on the property at issue. But, while these documents are at least arguably suggestive as to the intentions of the persons *874 involved in the transaction in 1913, the Act of Donation was prepared, executed and recorded in 1929. Because the documents relied upon by the School Board are not at all contemporaneous with the Act of Donation, they are not reliable sources as to the meaning of the phrases "school purposes" and "public school purposes" in the Act of Donation. Over a period of sixteen years, City administrations, School Board personnel and educational facility needs all change, so it is certainly possible and arguably likely that the circumstances of the 1929 Act of Donation varied considerably from those of the 1913 documents relied upon by the School Board. Simply put, we cannot say that the trial court was unreasonable in deciding to give little or no weight to the documents relied upon by the School Board. Such weighing of the evidence primarily is the function of the trial court. Rosell, supra; Stobart, supra.
More generally, we cannot say that the trial court's finding of fact as to the meaning of the Act of Donation is unreasonable. If the condition of the donation was that the property should be used for an actual school, and that no other purpose would suffice, then it would seem likely that the Act of Donation would say that the donated property "is to be used for a school" or "is to be used for the purpose of a school." The phrase "school purposes," particularly the use of the plural form of the word "purposes," suggests a general category of purposes related to the City's schools rather than the single specific purpose of an actual school. In short, we cannot say that the trial court's resolution of this factual issue was clearly wrong or manifestly erroneous.
We turn next to Hedwig's argument that the donation should be revoked because the property at issue is not being used for "school purposes." It is uncontested that, from 1993 to the time of trial (and presumably to the present), the building on the property has been used for storage of School Board property. Thus, the issue is whether storage of School Board property is a "school purpose" within the meaning of the Act of Donation.
The trial court, in its Reasons for Judgment, did not address this issue. Once the trial court found that the right to revoke the donation had not prescribed, it simply held that the donation should be revoked. "Therefore, Hedwig's right to revocation has not prescribed, and Judgment should be rendered in favor of Hedwig, Inc. and against Orleans Parish School Board returning the property in question to the successor in title [to NOLC], Hedwig, Inc." Thus, we address the issue of whether storage of School Board property constitutes a "school purpose" within the meaning of the Act of Donation in the absence of any trial court finding of fact specifically as to that issue.
However, as discussed above in connection with the prescription issue, the trial court did make a finding of fact that the phrase "school purposes" in the Act of Donation "would include any general goal, aim, need or interest of the Orleans Parish School Board." Based upon this finding of fact, which we have held above to be not clearly wrong or manifestly erroneous, there is apparent difficulty with the argument that storage of School Board property is not a "school purpose." Indeed, there is inherent difficulty in arguing that the phrase "school purposes" should be read broadly so as to include a School Board administrative center, but then be read narrowly enough to exclude School Board storage.
The decision Frame v. Shreveport Anti-Tuberculosis League, 538 So.2d 684 (La.App. 2d Cir.1989), writ denied 541 So.2d 896 (La.1989) while having facts quite different than the present case, provides a "good faith use" standard which we find persuasive and applicable to the present case. In Frame, the heirs of a donor of land sought to revoke the donation as to part of the land on the ground that not all of the donated land was being used for the purposes specified in the donation. The Frame court rejected that argument:
In the present case, there is only one general condition, that the property be used for the treatment of tuberculosis or some other equally charitable purpose.... The condition does not require that every square inch of the property be occupied *875 by buildings or structures used in pursuit of the purposes of the donation. Good faith use of a substantial portion of the property for the purpose intended ... is sufficient to fulfill the condition as to all the property and to prevent the revocation of the donation.

538 So.2d at 690 (emphasis added). In the present case, it is not the amount of property being used, but rather the type of use, which is the focus of Hedwig's argument. But, we believe that the good faith test of Frame is appropriately applied to the "type of use" issue in the present case.
Not only is it undisputed that the School Board has been using and continues to use the property at issue for storage of School Board property, Hedwig has not argued that the use of the School Board's property has not been or is not in good faith. Further, all indications from the record are that the School Board has been using and continues to use the property for storage in good faith. In fact, one of the School Board employees who testified by deposition mentioned that he would be going to the property the very next day to get something from storage. Moreover, it seems perfectly reasonable that a large public school system, such as that of Orleans Parish, will have a need for secure, weatherproof storage of School Board property and the property at issue apparently fulfills that purpose and relieves the School Board of leasing or acquiring storage space elsewhere. In short, there is no suggestion that the School Board's use of the property is a sham undertaken solely for the purpose of preventing revocation of the donation rather than for any purpose useful or convenient to the School Board. Hedwig asserts that the School Board wishes to sell the property at issue. That may well be correct but, even assuming that the School Board wishes to sell the property at issue, the undisputed fact is that the School Board has not sold the property. Nor, at least as of the time of trial, has the School Board abandoned or ceased to make use of the property. It may be that the School Board would prefer to sell the property at issue, thus losing the use of the property for storage, but realizing a financial gain, but it has not (so far) ceased its good faith use of the property for a school purpose. If and when the School Board does sell the property, or if and when the School Board ceases to make good use of the property for school purposes, then an action for revocation of the donation will be ripe.
Next, we address the School Board's argument that it may sell the property at issue with impunity, so long as the proceeds of the sale are used to procure one or more new school sites, under the protection of the "School Dedication Statute," La. R.S. 41:638 and 41:639, which statute states:
Whenever any real property has been acquired by the state of Louisiana, any municipality, parish school board, or any other subdivision or agency of the state of Louisiana by virtue of a deed, act of sale, donation, or other form of transfer, which contains a stipulation that such property is to be used for public school or public educational purposes, said deed, act of sale, donation, or other form of transfer, shall constitute a dedication of such property to the public for such purposes and the school board in whose district the property lies shall have the right to administer and use the property for public school purposes.
La.R.S. 41:638
Unless the deed, act of sale, donation, or other form of transfer by which said property is conveyed, contains specific provisions prohibiting the same, such school board may sell or dispose of any such property which is unused and unnecessary or is unsuitable for public school purposes, provided the mineral rights are reserved therein to the state of Louisiana and use the proceeds thereof to procure one or more new public school sites. In such event, the former owner, his heirs, successors and assigns shall have no claim by right of reverter to the property originally dedicated or to the proceeds thereof.
La.R.S. 41:639. The immediate problem with the School Board's argument is that the statute was enacted in 1960, see Acts 1960, No. 527, and the donation at issue took place in 1929. There is no indication in the statute that it is to be applied retroactively and: "No Section of the Revised Statutes is retroactive *876 unless it is expressly so stated." La.R.S. 1:2. "In the absence of contrary legislative expression, substantive laws apply prospectively only." La.Civ.Code art. 6. See Rousselle v. Plaquemines Parish School Board, 93-1916 (La. 2/28/96), 633 So.2d 1235, 1244. Further, interpreting the School Dedication statute to apply to abrogate conditions of donations made prior to the statute's enactment would raise a serious constitutional question and the interpretation of the statute which avoids that question is favored. Crown Beverage Co. v. Dixie Brewing Co., No. 96-2103, 695 So.2d 1090 (La.App. 4th Cir. 5/28/97). We do not believe that the 1960 School Dedication Statute applies to the 1929 Act of Donation.
Lastly, we address the School Board's argument that, under the Cy Pres statute, La.R.S. 9:2331, it may sell the property at issue without regard to the condition on the Act of Donation. The Cy Pres statute states:
In any case in which circumstances have changed since the execution or probate of a will containing a trust or conditional bequest for charitable, education or eleemosynary purposes, or since the death of the donor who during his lifetime established a trust or made a conditional donation for any of such purposes, and the change in circumstances is such as to render impractical, impossible or illegal a literal compliance with the terms thereof, the district court having jurisdiction of the succession of the testator of the domicile of the donee (and in the parish of Orleans, the civil district court) may, upon petition of a trustee, or of the person or corporation having custody or possession of the property subject to said trust, conditional bequest or donation or of any heir, legatee or donee who in the absence or invalidity of such trust, conditional bequest or donation would have been entitled to any part of the property contained therein, in accordance with the procedure hereinafter set forth, enter a judgment directing that such charitable trust, devise or conditional bequest or donation shall be administered or expended in such manner (either generally or specifically defined) as, in the judgment of said court, will most effectively accomplish as nearly as practicable under existing conditions the general purpose of the trust, will or donation, without regard to and free from any specific restriction, limitation or direction contained therein.
La.R.S. 9:2331 (emphasis added). From the emphasized language in the above quote from the Cy Pres statute, it is readily apparent that the statute applies only in cases of a will or the death of a donor. The present case involves neither a will nor the death of a donor. In fact, it is obvious that the Cy Pres statute does not apply in the case of corporate donors such as NOLC.

Conclusion
For the foregoing reasons we affirm the trial court's judgment that the right of revocation is not prescribed, that neither the School Dedication Statutes nor the Cy Pres statute is applicable, and that the School Board's petition for a declaratory judgment is dismissed. We reverse the trial court's judgment that the donation be revoked and Hedwig's reconventional demand for revocation is hereby dismissed (although without prejudice to Hedwig bringing an action for revocation if and when the School Board should sell the property at issue or cease to use the property in good faith for a school purpose).
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] In DiMattia v. DiMattia, 282 So.2d 554, 557 (La.App. 1st Cir.1973), the First Circuit held that the "usual prescription" applicable to an action to revoke a donation was the five year prescription provided by then  Civil Code Article 3452 which applied to actions "for nullity or rescission of contracts, testaments or other acts." (emphasis added). Present Civil Code Article 3497 provides five year prescription for annulment of testaments and for reduction of excessive donations and for certain other actions, but it does not address revocation of donations or "other acts." Thus, arguably, the "usual prescription" applicable to actions to revoke donations is now the ten year prescription for personal actions generally provided by Civil Code Article 3499. Nevertheless, DiMattia is still cited for the proposition that the "usual prescription" is five years. See Hebert v. Terrebonne Parish Police Jury, 491 So.2d 748, 751 (La.App. 1st Cir.1986); Swaim and Lorio, 10 Louisiana Civil Law Treatise: Successions and Donations, § 9.12 at 226 and n. 23 (1995). We need not resolve this question in the present case because the School Board contends that prescription began to run in 1985 and Hedwig contends prescription began to run in 1993. If prescription began to run in 1985, the right to revoke is prescribed even under the ten year prescription. If prescription began to run in 1993, then the right to revoke is not prescribed even under five year prescription.