1 .DOWNING, J.
This appeal involves a boundary action, a claim of acquisitive prescription and a claim for damages. George S. and Charis Rock Bourg filed an action against the Morning Star Baptist Church[1], hereinafter, “Morning Star,” its pastor and a member of its board of directors asking that a boundary be set between their respective properties. After a trial on the merits and the submission of all evidence and argument, the trial court entered judgment. This judgment fixed a boundary between the parties, declared the Bourgs had acquired an apparent predial servitude of passage, ordered Morning Star to remove a fence it had constructed across this servitude, and awarded damages to the Bourgs. Morning Star appeals this judgment. Morning Star also filed an exception of prescription in this court on the Bourgs’ claims for damages. For reasons that follow, we grant the exception of prescription, we reverse in part, we affirm in part, vacate, and remand.

FACTS AND PROCEDURAL HISTORY

In 1994 the Bourgs bought several tracts of land, one of which surrounded the Morning Star Baptist Church building and property on three sides. At some point, the Bourgs began to permit a dirt hauler to regularly use an old headland road that crosses the church premises from front to back alongside the church building. In response, in April 1997, Morning Star constructed a fence around its asserted property boundary, thereby preventing use of the headland road for access to the Bourg property.
On December 14, 1998, the Bourgs filed suit against Morning Star asking the trial court to fix the boundary between them and Morning Star |sand asking for such other relief to which they were entitled. The matter was tried one year later, on December 14, 1999. At the conclusion of trial, the trial court ruled that a boundary be fixed, that the Bourgs had acquired by prescription a predial servitude of passage to their other property over the old headland road across the church property, that the church was required to relocate and open its fence so that use of the servitude would be unblocked, that Morning Star pay damages, and that both parties were to share costs equally. On March 24, 2000, the trial court signed a judgment *668 incorporating these rulings, and also decreed that Morning Star was the owner of its immovable property resulting from acquisitive prescription under color of title.[2]
From this judgment Morning Star appeals raising the following assignments of error:
1) The trial court erred in finding the plaintiffs, George S. Bourg and Char-is Rock Bourg were entitled to a servitude of passage across defendant’s churchyard.
2) The trial court erred in awarding damages to plaintiffs for having to use other portions of their own property for access to Highway 57, both on grounds that any such claim has prescribed and that it was insupportable as an accessory to plaintiffs claim for a servitude.
3) The trial court erred in finding that defendant’s rear property line was affected by any action of the State, which is denied, involving the church’s front property line.
14Morning Star also raises for the first time in this court a peremptory exception of prescription asking that Bourg’s claim against Morning Star for damages be dismissed as being prescribed.

PEREMPTORY EXCEPTION OF PRESCRIPTION

Delictual actions are subject to a libera-tive prescription of one year. La.C.C. art. 3492. Morning Star asserts that the Bourgs’ claim for damages is prescribed because more than one year passed between the erection of the fence around their property in April 1997 that interrupted the Bourgs’ use of the headland road for access to their adjacent property and the Bourgs’ filing of their lawsuit on December 14,1998. We agree.
The Bourgs make two arguments against the application of liberative prescription in this matter. First, they argue that their claim for damages has not prescribed because it is ancillary to their action to establish a boundary and to clarify their right to a servitude of passage. The Bourgs, however, cite no law, and we can find none, to support the proposition that prescription for a damages claim is interrupted or extended when asserted with related claims. The boundary articles in the Louisiana Civil Code and Louisiana Code of Civil Procedure, La.C.C. Arts. 784 et seq. and La.C.C.P. arts. 3691 et seq., do not provide an award for damages. Nor do the pertinent Louisiana Civil Code arti *669 cles concerning acquisition of predial servi-tudes, La.C.C. arts. 735 et seq. and La.C.C. arts. 3486 et seq.
Rather, our case law suggests that prescription for damages cannot be linked and extended by attachment to real actions with longer prescriptive periods. In Carbo v. Hart, 459 So.2d 1228, 1230 (La.App. 1 Cir.1984), this court made the following observation:
Plaintiffs’ reliance upon article 753 is misplaced. The ten-year prescriptive period of that article applies to abandonment of a predial servitude for nonuse. It has no | ^application to a claim for damages asserted by a person entitled to the servitude. Plaintiffs’ petition seeks money damages for injuries to property alleged to have been caused by a violation of their servitude. The ten-year prescriptive period of article 753 has no application to such an action and the trial court committed no error in refusing to apply that article. (Emphasis added.)
Here, the prescriptive period applicable to acquisitive prescription and the imprescriptability of boundary actions, La. C.C. art. 788, have no application to the Bourgs’ claim for damages. Since the damage claims were not brought within one year of the alleged delict, prescription bars this claim.
Second, the Bourgs argue that the construction of the fence across their access road constituted a continuing tort. This argument is also misdirected. The Louisiana Supreme Court recently stated the following:
Recently, we clarified the continuing tort doctrine in a property law case, Crump v. Sabine River Authority, 98-2326 (La.6/29/99), 737 So.2d 720. We held that “[a] continuing tort is occasioned by [the continual] unlawful acts, not the continuation of the ill effects of an original, wrongful act.” Addressing the requirement that there be continuous conduct by the defendant, we stated that “[t]he continuous conduct contemplated in a continuing tort must be tor-tious and must be the operating cause of the injury.”
When a defendant’s damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort. (Citations omitted.)
In re Medical Review Panel for Claim of Moses, 00-2643, p. 16 (La.5/25/01), 788 So.2d 1173, 1183.
Here, the fence was completed in April 1997. The existence of alleged continuing damage does not present successive causes of action accruing because of the alleged continuing tort. Accordingly, we sustain Morning Star’s exception of prescription and dismiss all the Bourgs’ claims for damages for denial of access to the alleged servitude. Since damages | ¿was the subject of assignment of error number 2 and these claims are barred by prescription, we pretermit discussion of this issue.

SERVITUDE OF PASSAGE

The trial court ruled the Bourgs had acquired an “apparent predial servitude of passage fifteen (15') feet in width” across the Morning Star property. While the Bourgs or their ancestors in ownership never obtained title to this servitude, the trial court observed in its oral reasons that such servitude could be acquired by prescription. Under the facts of this case, we conclude the trial court erred as a matter of law in recognizing the Bourgs’ alleged right to a servitude of passage across the Morning Star property.
*670 In Griffith v. Cathey, 99-923 (La.App. 3 Cir. 2/2/00), 762 So.2d 29, writ denied, 00-1875 (La.10/6/00), 771 So.2d 85, the court addressed the effects of Louisiana Acts 1977, No. 514, which amended the requirements for acquisitive prescription of servi-tudes, as follows:
The guidelines for acquiring an apparent servitude by acquisitive prescription are set forth in La.Civ.Code art. 742:
The laws governing acquisitive prescription of immovable property apply to apparent servitudes. An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith.
The comments to Articles 740 and 742 indicate that the articles changed the law by allowing prescriptive acquisition of apparent discontinuous servitudes; however, the provision is not retroactive. Quasi-possession of a servitude that would be discontinuous under the prior law does not give rise to prescriptive rights except from the effective date of the new article, January 1, 1978. La. Civ.Code art. 740 (Comment (a)).
A right-of-way over a paved roadway was an apparent discontinuous servitude under the 1870 Civil Code. That Code provided that discontinuous apparent servitudes could not be acquired by acquisitive prescription. Since the amendment to Article 740 is not retroactive, prescriptive rights as to formerly discontinuous servitudes, including servitudes of passage, |7commence from the effective date of the revised Article, January 1,1978. (Citations omitted.)
Griffith v. Cathey, 99-923, pp. 8-9, 762 So.2d at 35.
The Louisiana Civil Code of 1870 art. 766 provided that, “discontinuous ser-vitudes, whether apparent or not, can be established only by title.” The requirement of continuousness has been revoked by Louisiana Acts 1977, No. 514. However, this change has prospective application only. Griffith v. Cathey, 99-923, pp. 8-9, 762 So.2d at 35. See also Daniel v. Department of Transportation and Development, 396 So.2d 967, 971 (La.App. 1 Cir.1981). Under prior law, discontinuous apparent servitudes could not be acquired by acquisitive prescription. Griffith v. Cathey, 99-923, pp. 8-9, 762 So.2d at 35.
The Bourgs argue that the use of the headland road across the Morning Star property has been continuous since it has been continually used throughout the years. This argument, however, is contrary to well established Louisiana law and jurisprudence. Prior to its revision, the Louisiana Civil Code of 1870 provided:
Article 727. Servitudes are either continuous or discontinuous.
Continuous servitudes are those whose use is or may be continual without the act of man.
Such are aqueduct, drain, view and the like.
Discontinuous servitudes are such as need the act of man to be exercised.
Such are the rights of passage, of drawing water, pasture and the like. (Emphasis added.)
Accordingly, in Nash v. Whitten, 326 So.2d 856, 860 (La.1976), the Louisiana Supreme Court employed the following test for determining whether or not a servitude was continuous:
Continuous servitudes are those whose use (by the dominant estate) is, or may be, continual without the act of man. If man’s intervention is needed in order for the dominant estate to ^exercise the ser *671 vitude, the servitude must be classified as discontinuous. (Citations omitted.)
Under the terms of former La.C.C. art. 727 (1870) and the Louisiana Supreme Court’s test, predial servitudes of passage are not continuous. A person’s intervention in using the servitude for ingress and egress is needed for the dominant estate to exercise the servitude. Therefore, the fact that the headland road across the Morning Star property had been used throughout the years does not make its use legally continuous.
Since the Bourgs’ have no title to, or color of title in, the servitude at issue and since thirty years have not passed from the January 1, 1978 effective date of the amendments to La.C.C. arts. 740 and 742, it is impossible for the Bourgs to have acquired an apparent predial servitude of passage across the Morning Star property.[3]
Morning Star’s assignment of error number 1 has merit. We reverse the trial court in this regard and vacate the judgment insofar as it recognizes a predial servitude of passage in favor of the Bourgs across the Morning Star property. We also vacate the judgment insofar as it orders Morning Star not to gate or otherwise obstruct passage through its churchyard.

BOUNDARY

Morning Star does not challenge the general placement of its boundary with the Bourgs other than the trial court’s action in establishing the depth of its property to ninety feet (90') when its title and another recorded document describes a depth of one-hundred feet (100').[4] The trial court ruled that Morning Star lost ten feet (10') of depth along its westerly [flline when it granted a servitude to the Department of Transportation and Development in 1951. We conclude this ruling was manifestly erroneous.
First, the parties stipulated as a fact in their “Joint Pre-trial Statement” that they “have established that they agree the fence post representing the MSBC’s southwestern boundary in fact marks the southwestern corner boundary between the two separate pieces of property_” Further, Mr. Bourg testified that he agrees to the northern boundary. Therefore, placement of Morning Star’s boundary measuring one arpent by one hundred feet (100') can be set with certainty.
Second, the only expert admitted to testify in the field of civil engineering testified that the boundary of the highway right-of-way closest to Morning Star’s property and the same boundary of the previous shell road are almost identical. He further testified that the highway servitude was widened entirely away from Morning Star’s property in the direction of the bayou.
Third, the trial court acknowledged its inability to accurately determine Morning Star’s boundary along the highway. The trial court stated as follows:
*672 And I feel that I’m somewhat picking an arbitrary number. I firmly believe that something was taken, and I wish I could be more accurate than an estimate.
The trial court then found that the highway had taken ten feet from the front of Morning Star’s property.
The manifest error test requires the reviewing court to consider the record as a whole to ascertain whether the trier of fact’s findings and conclusions constituted manifest error. Since the trier of fact’s findings are accorded great weight on appeal under this standard of review, an appellate |incourt may only reverse if it concludes from the record that a reasonable factual basis does not exist for the trier of fact’s findings and the appellate court must further determine that the findings were clearly wrong based on the record. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). From the record we conclude that a reasonable factual basis does not exist for the trial court’s finding that Morning Star lost ten feet in depth, and we conclude that this determination was clearly wrong.
Accordingly, Morning Star’s assignment of error number 3 has merit. We vacate the trial court’s judgment insofar as it establishes a depth of ninety feet (90') for the easterly and westerly property lines of the Morning Star property and conclude that judgment must be entered establishing a depth of one hundred feet (100') for these property lines. Therefore, we also vacate the judgment insofar as it orders Morning Star to move its fence in by ten feet (10').

CONCLUSION

For reasons stated, we reverse in part and vacate the judgment of the trial court as ordered above. We remand this matter for entry of judgment consistent with this opinion. Specifically, 1) we dismiss all awards of damages to the Bourgs; 2) we vacate the judgment of the trial court insofar as it declares a servitude of passage in favor of the Bourgs and prohibits Morning Star from fencing or gating its property; 3) we vacate the trial court’s judgment establishing a depth of ninety feet (90') for the easterly and westerly property lines of the Morning Star property; 4) we direct that judgment be entered establishing a depth of one hundred feet (100') for these property lines and establishing Morning Star’s boundary by measuring from the stipulated corner point; 5) we vacate the trial court judgment insofar as it Inorders Morning Star to move its fence in by ten feet (10'); 6) we order that the judgment be made subject to any rights the heirs of Robert Ruffin Barrow may have in the Morning Star property. In all other respects the judgment of the trial court is affirmed. Costs are assessed to the Bourgs.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.
FITZSIMMONS, J., concurs in the result, and assigns reasons.

. Morning Star Baptist Church was incorporated in 1883 under the name, “Morning Star Benevolent Association.”

. The record reflects that the heirs of the original donor of the property to Morning Star may have imposed a resolutory condition that the property be used only for religious purposes. The original donor’s act of donation was never recorded and is now lost. In a document recorded in the Terrebonne Parish registry, filed October 2, 1942, the heirs ratified the donation and quitclaimed their interest in the property to Morning Star, "subject to the express condition that in the event the said property should cease to be used for the purposes aforementioned, the title hereto shall revert to the heirs of the late Robert Ruffin Barrow.”
We do not rule on the efficacy of this right of reversion since the Barrow heirs were not joined in this litigation and the issue is not before us. However, a right of reversion in donated property may be enforceable when in compliance with law. See Louisiana Civil Code Arts. 1527, 1534 and 1535, among others. See also Voinche v. Town of Marksville, 124 La. 712, 715-717, 50 So. 662, 663 (1909), Segura Realty Co. v. Segura Sugar Co., 145 La. 510, 512, 82 So. 684, 685 (1919), Board of Trustees of Columbia Road Methodist Episcopal Church v. Richardson, 216 La. 633, 642-644, 44 So.2d 321, 324-325 (1949), Orleans Parish School Board v. Campbell, 241 La. 1029, 1041, 132 So.2d 885, 890 (1961). This issue has no bearing on the issues raised by these parties on this appeal. However, this decision in no way affects the rights, if any, of the Barrow heirs.

. The Bourgs do not argue “destination of the owner" as a basis for their right to use the headland road as a predial servitude, even though the record reflects that both properties were owned by the same owner at one time. We note, however, that prior to January 1, 1978, the effective date of La.Acts.1977, No. 514, La.C.C. art. 767, now La.C.C. art 741, proof of title by destination of an owner required that a servitude be “apparent” and "continuous.” As discussed above, the amendment removing the requirement for continuousness cannot be applied retroactively. Also, the record does not reflect whether the headland road was established when owned by the common owner.

. Morning Star’s property is described as measuring, “one arpent front by the depth of one hundred feet.”