538 So.2d 684 (1989)
Bryan Ardis FRAME, et al., Plaintiff-Appellee,
v.
SHREVEPORT ANTI-TUBERCULOSIS LEAGUE, et al., Defendants-Appellants.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Bryan Ardis FRAME, et al., Defendants-Appellants.
Nos. 20269-CA, 20270-CA.
Court of Appeal of Louisiana, Second Circuit.
January 18, 1989.
Rehearing Denied February 16, 1989.
Writ Denied April 21, 1989.
*685 William M. Cady, Asst. Atty. Gen., Shreveport, for defendants-appellants.
Rountree, Cox & Guin by Gordon E. Rountree, and Evans, Feist & Mills by George H. Mills, Jr., Shreveport, for plaintiffs-appellees.
Edward O. Kernaghan, Cook, Yancey, King & Galloway by Edwin Blewer, Jr., Shreveport, for amicus curiae.
Before HALL, NORRIS and LINDSAY, JJ.
*686 LINDSAY, Judge.
These are consolidated cases concerning ownership of approximately fifty-five acres of land donated in 1918 to the Shreveport Anti-Tuberculosis League for use as a tuberculosis treatment facility. The heirs of the original donor sought to revoke the donation for failure of the ultimate donee of the property, the State of Louisiana, to comply with the condition of the donation. The condition called for the property to be used as a tuberculosis sanitarium or camp or for some other equally charitable purpose.
The trial court held that the heirs were entitled to ownership of approximately one-half of the property plus a sum of money deposited in the registry of the court pursuant to an expropriation of a portion of the property. The court also held that the State was entitled to retain ownership of the remainder of the tract in question. The State appealed and the heirs answered the appeal, each claiming ownership of the entire property. For the following reasons, we affirm in part and reverse in part the trial court judgment.

FACTS
On May 15, 1918, Colonel J.B. Ardis donated approximately fifty-five acres of land to the Shreveport Anti-Tuberculosis League for use as a tuberculosis sanitarium, subject to the following condition:
It is agreed and understood that if said property should cease to be used for a tuberculosis sanatorium or camp or some other equally charitable purpose, the same should then revert back to the donor.
Following the donation, a facility for the treatment of tuberculosis was established on the property. The facility was operated by the Shreveport Anti-Tuberculosis League for many years. On May 20, 1948, the Shreveport Anti-Tuberculosis League donated the property to the Pines Sanitoria, Inc. In that same year, the Pines Sanitoria, Inc. donated the property to the State of Louisiana. The State operated the tuberculosis treatment center on the property continuously until 1972. The facility was known as the Pines Tuberculosis Sanitarium.
Due to innovations in the treatment of tuberculosis, the need for hospitalization and isolation of tuberculosis patients became less frequent. Nationally, the number of patients housed in specialized tuberculosis treatment facilities declined. The same was true of the Pines Tuberculosis Sanitarium. In early January, 1972, Governor Edwards ordered the Pines closed as a treatment facility for tuberculosis patients. The patients who were hospitalized at the Pines were transferred to other facilities or were treated on an outpatient basis.
Shortly after the closure of the tuberculosis sanitarium, the State began renovations on one of the residences on the property for use as a halfway house for recovering alcoholics. The halfway house was opened in September or October, 1973.
On June 7, 1973, the heirs of Colonel Ardis filed suit to revoke the donation. Bryan Ardis Frame, Caro P. Mills, Nancy Mills VanHoose and George H. Mills filed suit against the Shreveport Anti-Tuberculosis League, the Pines Sanitoria, Inc., the Louisiana Tuberculosis and Respiratory Disease Association and the State of Louisiana, claiming that the State had abandoned use of the property for any purpose and therefore ownership of the property should revert to the heirs of the donor.
In the alternative, the heirs claimed that any portion of the property not being used by the State for a charitable purpose, in compliance with the donation, should be returned to them.
In the years following the initial filing of the suit to revoke the donation, there were several substitutions and changes of parties in the lower court. In 1976, Betsey Frame Koenen was added as a plaintiff. In 1981, Pamela J. Frame was substituted as a plaintiff for Bryan Ardis Frame and Bryan Ardis Frame, II. June B. Mills was substituted as a plaintiff for George H. Mills. In 1986, George H. Mills, Jr., Bryan H. Mills, Ardis H. Mills, James H. Mills and Nancy Mills VanHoose were substituted as plaintiffs for Caro P. Mills.
*687 On May 6, 1974, the State of Louisiana, through the Department of Highways, filed an expropriation suit against Bryan Ardis Frame, Virginia Frame, Betsey Frame, George H. Mills, Jr., Caro P. Mills, Nancy Mills VanHoose, the Pines Sanitoria, Inc., Shreveport Anti-Tuberculosis League and the Louisiana Tuberculosis and Respiratory Disease Association. The Highway Department sought to expropriate 5.15 acres in the southern portion of the property in order to relocate U.S. Highway 80 and to build the Pines Road interchange onto I-20. Since title to the property was in litigation in these proceedings, the Highway Department deposited the sum of $54,325.00, the estimated value of the property, into the registry of the court. Pursuant to stipulation and court order, this sum was placed in an interest bearing account.
With the deposit of the funds representing the value of the property, the expropriation order was signed. Therefore, the issue in that case became which of the defendants was entitled to the money. The amount deposited by the State as the fair value of the property was not contested.
On April 14, 1986, the suit to revoke the donation and the expropriation suit were consolidated. Trial on the consolidated cases began December 18, 1986 and concluded January 30, 1987. On May 4, 1987 the case was argued and submitted. On October 23, 1987, the trial court filed written reasons for judgment.
At trial, a survey map of the property was filed into evidence. A copy of the map of the property is attached to this opinion as an appendix. The surveyor divided the property into two tracts, the first containing 24.61 acres and the second containing 18.95 acres. Tract 1 has a nature trail, a baseball field, and an overseer's house. Tract 2 contains the physical plant of the treatment facility. Also shown on the map is the 5.15 acre strip of land expropriated by the Highway Department for the relocation of U.S. Highway 80. With the relocation of Highway 80, a portion of the donated property was cut off and separated from the originally donated tract. This expropriation left a 0.6 acre tract and a 3.1 acre tract of land cut off from Tract 2.
The trial court, in written reasons for judgment, cited the applicable Civil Code Articles dealing with donations[1] and concluded that the clause contained in the act of donation executed by Colonel Ardis, requiring that the property be used for a tuberculosis sanitarium, camp or other equally charitable purpose, created a right to revoke the donation for noncompliance with the condition. The court went on to cite Civil Code Articles dealing with general obligations and the divisibility of obligations. The court then reasoned that the wording of the condition allowed the donee to make alternate uses of the property and gave the donee a choice as to the method of fulfilling the condition of the donation. The court stated that because the donation provided for alternative uses of the property, the obligation created by the condition of the donation was a divisible obligation. The court resorted to Civil Code articles dealing with equity to conclude that because the obligation was divisible, it could be fulfilled on parts of the property and not fulfilled on other parts.
The trial court then found that through the years the defendants had used the property in Tract 2 for tuberculosis treatment and an equally charitable purpose (the treatment of alcoholism). These uses of the property were sufficient to fulfill the condition of the donation and prevent reversion of that tract of land to the plaintiffs.
The court found that after the tuberculosis sanitarium had closed there had not been sufficient use of Tract 1 to fulfill the condition of the obligation. Therefore, the court held that ownership of Tract 1 reverted to the heirs.
The court also found that the State, by expropriating 5.15 acres of the property for a highway, had ceased to use this portion of the land for a charitable purpose. *688 Therefore, the court ruled that the money paid for the property in the expropriation suit belonged to the heirs of the donor.
The court found that the State, by virtue of the expropriation, separated the 0.6 acre tract and the 3.15 acre tract from the main portion of the property and thereby rendered them unusable for the charitable purposes contemplated by the condition of the donation. The court held these two pieces of property also reverted to the ownership of the plaintiffs.
From this judgment, the State appealed, claiming that the trial court erred in finding that the condition was divisible and in failing to recognize that fulfillment of the condition by the use of a portion of the property would constitute fulfillment of the condition as to all the property. The State contends that the trial court should have completely rejected the heirs' claim for revocation of the donation. The heirs answered the appeal, claiming that the trial court erred in failing to declare them to be owners of the entire property.
The issues raised in this appeal are whether the trial court was correct in finding a conditional donation to be a divisible obligation, thereby entitling the heirs to a portion of the property, whether the trial court was correct in finding the heirs were entitled to the money from the expropriation suit and whether the heirs were entitled to ownership of the 0.6 acre tract and the 3.15 acre tract separated from the main property by virtue of the expropriation and relocation of U.S. Highway 80.

CONDITIONAL DONATIONS
The Civil Code articles in effect at the time of the filing of the heirs' suit are controlling in this case.[2] There are three kinds of donations inter vivos, including the onerous donation which is burdened by a charge upon the donee. LSA-C.C. Art. 1523.
The donor may impose upon the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals. LSA-C.C. Art. 1527.
Donations inter vivos are liable to be revoked or dissolved for nonperformance of the conditions imposed upon the donee. In the case of revocation or rescission of the donation of an immovable on account of nonexecution of the condition, the immovable shall return to the donor. LSA-C.C. Art. 1559; 1568.
In the present case, the donor, Colonel Ardis, provided as a condition of the donation that the immovable property be used for a tuberculosis sanitarium or camp or for some other equally charitable purpose and upon failure of the condition, the property would revert to the ownership of the donor.
It is undisputed that following the donation, the property was used as a tuberculosis sanitarium until some time in 1972. As found by the trial court, the tuberculosis treatment facility was officially closed by the State on July 1, 1972. However, testimony in the record shows that outpatient treatment of tuberculosis patients continued *689 at the facility for a short time following the official closure date.
The record also shows that prior to the closing of the tuberculosis sanitarium, local groups concerned with the treatment of alcoholism were lobbying to use the disputed property for an alcohol treatment facility. Among these were the Caddo-Bossier Council on Alcoholism. After the closure of the sanitarium, the State arranged with this group to operate the facility as an alcohol treatment center. Pursuant to this arrangement, and following the closure of the tuberculosis sanitarium, the State began renovations on one of the houses on the property for use as a halfway house for recovering alcoholics.
In September or October, 1973, a facility for the treatment of alcohol abuse was opened on the property and various forms of such treatment have been occurring on the property since that time.
The record also shows that the operation of the facility has been a charitable function by the State. A sliding scale is used for those who can pay, contributing a portion of the cost of treatment. Treatment is provided without charge for those who cannot afford treatment.
The heirs of the original donor claim that because of the lapse in use of the property between July, 1972 and September or October of 1973, the condition of the donation was not fulfilled and therefore ownership of the property reverted to them. The trial court found that the State had sufficiently complied with the terms of the condition on a portion of the property sufficient to prevent reversion of ownership of that part of the property to the heirs.
The record shows that even though little active use of the property was made between July 7, 1972 and September or October, 1973, during that time the State was renovating and converting the property to an "equally charitable" use. The question then becomes whether the State complied with the condition of the donation within a reasonable time after closure of the tuberculosis sanitarium.
The jurisprudence dealing with conditional donations has held that where no time is specified for fulfillment of the condition, the condition must be fulfilled within a reasonable time subject to the circumstances surrounding the gift. Braquet v. Administrators of the Tulane Educational Fund, 304 So.2d 720 (La.App. 4th Cir.1974), writ denied 305 So.2d 538 (La.1974); Bowers v. Roman Catholic Church of the Diocese of New Orleans, 264 So.2d 329 (La. App. 4th Cir.1972), writ denied 262 La. 1152, 266 So.2d 441 (1972). As to what constitutes a reasonable time, each case must be decided on its own merits. Bowers v. Roman Catholic Church of the Diocese of New Orleans, supra.
Approximately fifteen months passed between the closure of the tuberculosis sanitarium and the opening of the first halfway house for recovering alcoholics. During that time, renovations were made to a residence on the property to facilitate use as a halfway house. In addition, during that time, the property was administered by Confederate Memorial Medical Center, a State operated hospital providing charitable health care. This institution utilized a portion of the property for storage of records and equipment.
Under the circumstances of this case, the trial court was correct in finding that the condition of the donation was fulfilled by converting use of the property from a tuberculosis sanitarium to a charitable facility for the treatment of alcohol abuse. In addition, the period of approximately fifteen months which passed during the renovation and conversion of the property from one use to another was reasonable.
It would not be reasonable to hold that the State was required to open the alcohol treatment center immediately upon closure of the tuberculosis sanitarium in order to maintain ownership of the property. In addition, the jurisprudence dealing with revocation of donations for nonfulfillment of conditions has traditionally found donations subject to revocation only after long periods of noncompliance with the condition. Voinche v. Town of Marksville, 50 So. 662 (La.1909); Orleans Parish School *690 Board v. Manson, 241 La. 1029, 132 So.2d 885 (1961).
The record also shows that since the opening of the first halfway house for recovering alcoholics in late 1973, further renovations were undertaken on the property. A second halfway house was opened and a large brick building was renovated for inpatient treatment of alcohol abuse. Both facilities were opened in 1976 and have been in continuous operation since that time.
Therefore, under the circumstances of this case, the trial court was correct in finding that the State fulfilled the condition of the donation requiring use of the property for a tuberculosis sanitarium, camp or some other equally charitable purpose. The use of the property was sufficient to prevent revocation of the donation.

DIVISIBILITY OF THE CONDITIONS
The trial court found that even though the State had fulfilled the condition of the donation sufficient to prevent a reversion of a portion of the property, the condition was divisible and had not been fulfilled on other portions of the property. Therefore the court found that the ownership of some portions of the original tract reverted to the heirs of the donor.
The trial court reached this conclusion by reliance upon former LSA-C.C. Arts. 2108 and 2109[3] dealing with the divisibility of obligations. The trial court reasoned that because the condition of the donation allowed alternate uses of the property and permitted the donee to use the property for other than as a tuberculosis sanitarium or camp, or other equally charitable purposes, the donee had the choice of methods of fulfilling the condition and therefore the condition created a divisible obligation. By implication the trial court further reasoned that the property itself could be divided based upon whether its various parts were being used in compliance with the terms of the donation. The court then cited general rules of equity to reason that the State had fulfilled the condition on a portion of the property donated, but had failed to fulfill it on other parts. Therefore, the court found that the ownership of Tract 1, as shown on the survey map drawn by the heirs' surveyor, reverted to the heirs. The trial court also found that ownership of the two parcels of land separated from the main tract by the highway expropriation also reverted to the heirs because the State had made no use of this property since 1972.
For the following reasons, we reverse this portion of the trial court judgment.
The trial court erred in finding the condition to be a divisible obligation which allowed an arbitrary division of the property along a surveyor's line. In the present case, there is only one general condition, that the property be used for the treatment of tuberculosis or some other equally charitable purpose. Performance of that condition requires the heirs of the donor to allow the donee to remain in possession of all the property which was made the subject of the donation.
The condition does not require that every square inch of the property be occupied by buildings or structures used in pursuit of the purposes of the donation. Good faith use of a substantial portion of the property for the purpose intended, as occurred here, is sufficient to fulfill the condition as to all the property and to prevent the revocation of the donation.
We find no other case in which a court has revoked a donation as to a portion of the property for nonfulfillment of a condition, but has upheld the donation as to other portions. In cases dealing with donations containing conditions that the property be used for a particular purpose, fulfillment of the specified condition has been sufficient to prevent revocation of the entire donation. Board of Trustees of Columbia Road Methodist Episcopal Church *691 of Bogalusa v. Richardson, 216 La. 633, 44 So.2d 321 (1949); Bonner v. Board of Trustees, 181 So.2d 255 (La.App. 4th Cir. 1965), writ denied 248 La. 915, 182 So.2d 664 (1966).
We find that the State has fulfilled the condition of the donation. Therefore, ownership of the entire property remains with the State, with the exception of the tract which was expropriated for the relocation of the highway, as discussed hereafter.

EXPROPRIATION AND SEPARATED TRACTS
Consolidated with the suit by the heirs for revocation of the donation is the expropriation suit whereby the State took a 5.15 acre tract from the disputed property for construction of the highway interchange. Because ownership of the property was disputed, the heirs of the donor as well as the State were named as defendants. The State paid $54,325.00 into the registry of the court as compensation for the property taken.
The trial court found that as to the 5.15 acre expropriated tract, the State was, in effect, taking the property from itself and converting it to use for something other than a charitable purpose. Therefore, the heirs were entitled to the funds paid into the registry of the court. The trial court also found that the State, by virtue of the expropriation, severed from the main property a 0.6 acre tract and a 3.15 acre tract that had not been used for charitable purposes for years and therefore ownership of these tracts reverted to the heirs.
The State argues that it is entitled to both the expropriation funds and the severed property by virtue of the doctrine of cy pres. This doctrine, found in LSA-R. S. 9:2331, provides:
In any case in which circumstances have changed since the execution or probate of a will containing a trust or conditional bequest for charitable, educational or eleemosynary purposes, or since the death of the donor who during his lifetime established a trust or made a conditional donation for any of such purposes, and the change in circumstances is such as to render impractical, impossible or illegal a literal compliance with the terms thereof, the district court having jurisdiction of the succession of the testator or of the domicile of the donee (and in the parish of Orleans, the civil district court) may, upon petition of a trustee, or of the person or corporation having custody or possession of the property subject to said trust, conditional bequest or donation or of any heir, legatee or donee who in the absence or invalidity of such trust, conditional bequest or donation would have been entitled to any part of the property contained therein, in accordance with the procedure hereinafter set forth, enter a judgment directing that such charitable trust, devise or conditional bequest or donation shall be administered or expended in such manner (either generally or specifically defined) as, in the judgment of said court, will most effectively accomplish as nearly as practicable under existing conditions the general purpose of the trust, will or donation, without regard to and free from any specific restriction, limitation or direction contained therein.
The State claims that the highway needs of the citizens of Louisiana and the resulting expropriation of the property made it impossible to fully comply with the condition of the donation. This claim of impossibility relates primarily to the property taken for the highway approach to the interchange.
The trial court was correct in finding that the doctrine of cy pres did not apply to the facts of this case. As to the property actually taken for use as a highway interchange, the State, in effect, took this property from itself. Therefore, the impossibility of use of this property for a charitable purpose was caused by the State, even though by another arm of State government. The impossibility of use was not caused by circumstances beyond the control of the State. Under such circumstances, awarding the expropriation money to the heirs of the donor is appropriate. Hero v. City of New Orleans, 135 So.2d 87 (La. App. 4th Cir.1961).
*692 As to the two portions of property separated from the main tract, we find that the State is entitled to continued ownership, but for reasons other than the application of the doctrine of cy pres.
First, the record shows that even though these two parcels are separated from the main tract, use of this land for "an equally charitable purpose" is not precluded. Testimony in the record indicates that the small parcel may be used for a picnic area and the large parcel may be used as an outpatient treatment facility if funding becomes available.
As to these two portions of property, circumstances have not made it illegal, impossible or impracticable to use the property for a charitable purpose. Further, we find that, even though these two parcels of land are separated from the main portion by virtue of the highway expropriation, they are not necessarily independent of the main tract.
Simply because the parcels were physically separated from the main tract by the highway, they should not be treated as separate and distinct from the initial tract of property made the subject of the donation. Our jurisprudence provides that:
A public highway actually wrought and travelled, a railroad, a canal or a creek running through a large tract devoted to one purpose does not necessarily divide it into independent parcels, provided the owner has the legal right to cross the intervening strip of land or water.[4]
Therefore, even though the highway became superimposed upon the originally donated tract, the two smaller portions continue to be a part of the larger tract and are usable for charitable purposes in accordance with the condition of the donation.
In addition, as we stated earlier, we find that fulfillment of the condition on one portion of the property is fulfillment as to the whole, including the two parcels separated by the highway. Therefore, the ownership of these parcels remains with the State in accordance with the terms of the original donation.

MOTION TO EXPUNGE
The heirs of the donor have filed a motion in this court to expunge certain documents from the record on the grounds that these documents were not admitted into evidence in the trial court or filed as an offer of proof. The documents complained of are defendant's exhibits 32-A, 34-C and the first of two exhibits marked defendant's exhibit 53.
Defendant's exhibit 32-A is a memo from the Confederate Memorial Medical Center personnel director based upon a visit to the property on August 28, 1972. The memo lists personnel still employed at the facility and their salaries.
Defendant's exhibit 34-C is a letter dated July 6, 1972, by Charles Roemer, former Commissioner of Administration, to Dr. Edgar Galloway, Director of Confederate Memorial Medical Center, authorizing the use of four employees and $25,000.00 to close the Pines, with the closure to be completed by October 1, 1972.
The first exhibit labeled defendant's exhibit 53 is a local newspaper article of March 15, 1973 dealing with plans to convert the Pines to a "multi-purpose rehabilitative facility."
The heirs are correct in contending that these exhibits were not admitted into evidence nor were they submitted as an offer of proof. As a consequence, they do not properly form a portion of the record on review by this court. The motion for expungement is granted. These exhibits have not been considered by this court in arriving at its decision.

CONCLUSION
For the above stated reasons, as to No. 20,269-CA, the first of these consolidated cases, we affirm that portion of the trial court judgment finding that the State fulfilled the condition of the donation by converting the use of the property from a tuberculosis sanitarium to an alcoholic *693 treatment facility within a reasonable period of time.
However, we find that the trial court erred in holding that the condition of the donation was fulfilled only as to Tract 2, i.e., that portion of the property upon which the main treatment facility is located. Good faith use of a substantial portion of the property for the purpose intended, as occurred here, fulfills the condition as to all the property.
Therefore, that portion of the trial court judgment directing that ownership of Tract 1, the 0.6 acre tract and the 3.5 acre tract be transferred to the heirs is hereby reversed and set aside. The State of Louisiana is hereby recognized as the owner of and entitled to the continued possession of the entire property.
As to No. 20,270-CA, the expropriation suit, the second suit in this consolidated cases, we find that title to the 5.15 acres expropriated for use as a highway is vested in the State Highway Department. However, we find that the State, through its own action in expropriating this property, rendered impossible the use of that property in fulfillment of the condition of the donation. Therefore, we affirm the trial court judgment finding that the heirs of the donor are entitled to the funds deposited in the registry of the court as compensation for the expropriated property. We reject the State's claim that, because another arm of the State, the Highway Department, expropriated this property, that performance of the condition was rendered impossible and therefore the State should be awarded compensation for the property.
Costs are assessed to appellees.
AFFIRMED IN PART AND REVERSED IN PART.

ON APPLICATION FOR REHEARING
Before HALL, NORRIS, LINDSAY, MARVIN and SEXTON, JJ.
Rehearing denied.
*694 
NOTES
[1] The articles dealing with donations and obligations in effect prior to the 1985 revision are applicable to this case.
[2] The text of the former Civil Code Articles is as follows:

Art. 1523. There are three kinds of donations inter vivos:
The donation purely gratuitous, or that which is made without condition and merely from liberality;
The onerous donation, or that which is burdened with charges imposed on the donee;
The remunerative donation, or that the object of which is to recompense for services rendered.
Art. 1527. The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or goods morals.
Art. 1559. Donation [Donations] inter vivos are liable to be revoked or dissolved on account of the following causes:
1. The ingratitude of the donee;
2. The nonfulfillment of the eventual conditions, which suspend their consummation;
3. The nonperformance of the conditions imposed on the donee;
4. The legal or conventional return.
Art. 1568. In case of revocation or rescission on account of the nonexecution of the conditions, the property shall return to the donor free from all incumbrances or mortgages created by the donee, and the donor shall have, against any other persons possessing the immovable property given, all the rights that he would have against the donee himself.
[3] Art. 2108. An obligation is divisible or indivisible, according as it has for its object, either a thing which, in its delivery or a fact which, in its execution, is or is not susceptible of division, either material or intellectual.

Art. 2109. The obligation is indivisible, though the thing or the fact which is the object of it, be by its nature divisible, if the light, in which it is considered in the obligation, does not admit of its being partially executed.
[4] 4 Nichols, The Law of Eminent Domain (3rd Edition 1951) § 14.31(1) Pgs. 433-435, quoted in State v. Williams, 131 So.2d 600 (La.App. 3d Cir.1961).