# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

## NO. 01-31250

_____

**HAWTHORNE LAND COMPANY,**

**Plaintiff-Appellant**

**versus**

**EQUILON PIPELINE COMPANY, LLC,**

**Defendant-Appellee**

**UNITED STATES DEPARTMENT OF ENERGY**

**Intervenor Defendant-Appellee**

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
_____

October 25, 2002

Before DAVIS, SMITH and BENAVIDES, Circuit Judges

DAVIS, Circuit Judge:

Plaintiff, Hawthorne Land Company ("Hawthorne") appeals the district court's judgment granting a summary judgment to Equilon Pipeline Company ("Equilon") and the United States Department of Energy (the "Government"). The district court concluded that Hawthorne's donation of a pipeline right-of-way to the Government contained no restriction which would prevent the Government from leasing the pipeline to Equilon. We agree with the district court

1

that the donation did not restrict the Government's ability to lease the pipeline to Equilon because the donation was not conditioned on the exclusive use of the pipeline for Strategic Petroleum Reserve ("SPR")[1] purposes and in any event the purposes of the SPR are served by Equilon's maintenance of the pipeline under the lease.

I.

In 1978, Hawthorne donated a servitude to the Government over land in Louisiana in St. James and Assumption Parishes for two pipelines for the SPR (the "Hawthorne Donation"). The Government constructed and operated the Bayou Choctaw Pipeline traversing the Hawthorne servitude. The servitude over Hawthorne's land is just part of the SPR system, which includes servitudes over properties in St. James, Assumption, Ascension and Iberville Parishes. These servitudes were acquired from other landowners by donation, expropriation and contractual arrangements. The Hawthorne Donation states that the Government acquired

> the full, complete and perpetual and assignable right, power, privilege of easement or servitude in, on and over and across the lands described below for the location, construction, operation, maintenance, alteration, repair and patrol of two pipelines for the purpose of the establishment, management and maintenance of the Strategic Petroleum Reserve, as authorized by the Act of Congress approved December 22, 1975, Public Law 94-163, 89 Stat. 871, 42 U.S.C. 6201. . .

The donation also states that

> Grantors donate and convey to the above described Grantee, the full, complete, perpetual, and assignable easement and right-of-way in, on, over, and across the land, for the location, construction, operation, and maintenance, alteration, repair and patrol of a dual pipeline and appurtenances thereunto belonging, including but not limited to valve stations as required and related fencing, in the establishment, management, and maintenance of the Strategic Petroleum Reserve . . .

---

[1] Pursuant to the Energy Policy and Conservation Act, 42 U.S.C. § 6201, *et seq.,* the SPR was created to reduce the impact of energy supply suspensions and reductions in the import of crude oil and refined petroleum products.

When its use of the Bayou Choctaw Pipeline for SPR purposes declined, the Government leased the excess capacity of the pipeline (the "Equilon Lease") to Equilon's predecessor-in-interest, Shell Pipe Line Corporation. Although Equilon currently uses most of the pipeline's capacity, the Government continues to use a portion of the pipeline to transport SPR crude oil. Significantly, the Equilon Lease requires Equilon to maintain and operate the pipeline at its own expense for the Government. The Equilon Lease also provides that, in the event of an emergency, the Government must be given full use of the pipeline for SPR purposes. In addition, the Government retained the right to conduct SPR system tests and to monitor and inspect the condition of the pipeline.

Hawthorne filed this suit seeking an injunction to prevent Equilon from using the pipeline. After discovery, all parties filed motions for summary judgment. The district court granted the motion for summary judgment filed by the Government and Equilon and denied Hawthorne's motion. Specifically, the district court held that the donation was not conditioned on the exclusive use of the servitude for SPR purposes and that Equilon's use of the pipeline under the Equilon Lease was within the rights granted by the donation. Hawthorne appeals.

II.

Summary judgments are reviewed *de novo,* and are appropriate when, viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Canova v. Shell Pipeline Co.*, 290 F.3d 753, 755 (5th Cir. 2002). The salient facts of this case are undisputed, thus this case presents only questions of law for our consideration.

Hawthorne argues that the Government had no authority to lease Equilon the pipeline for

commercial use because the Hawthorne Donation limits the Government's use of the servitude exclusively to SPR purposes.[2]  Under Hawthorne's argument, Equilon's use of the pipeline servitude would constitute a trespass, and an injunction would be an appropriate remedy.

Hawthorne urges us to adopt a narrow interpretation of the Hawthorne Donation, contending that the statement that the servitude is for the establishment, management and maintenance of the SPR limits the use of the servitude to that purpose and no other.  Ignoring that the servitude remains in use for the SPR and that the donation contains an assignability clause, Hawthorne relies on two Louisiana Supreme Court opinions, *Board of Trustees v. Richardson,* 44 So.2d 321 (La. 1949) and *Orleans Parish School Bd. v. Manson,* 132 So.2d 885 (La. 1961), as authority for its position that, if the SPR purpose is not served, the servitude terminated. However, these cases are easily distinguished as they both involved attempts by a donee to completely divest itself of donated property, retaining no interest in the property.  Here, the Government has only leased the property and continues to use the pipeline for SPR purposes. Thus, the *Richardson* and *Manson* decisions are inapposite.  Instead, we find *Frame v. Shreveport Anti-Tuberculosis League,* 538 So.2d 684 (La. App. 2 Cir. 1989) more pertinent.

The court in *Frame* held that a donation which is conditioned on use of a property for a specified purpose does not require that the entirety of the property be used for that purpose.  *Id.* at 690.  In *Frame*, Colonel J.B. Ardis donated  fifty-five acres of land to the Anti-Tuberculosis

---

[2]  Hawthorne argues that this matter turns on whether Louisiana or federal law applies to the Hawthorne Donation.  Hawthorne contends that the consistent use of the word "servitude" rather than "easement" indicates that the parties contemplated that Louisiana law would apply.  Contrary to Hawthorne's contention in this regard, the donation uses the terms "servitude," "easement" and 'right-of-way" to describe the interest donated to the Government.  In any event, we do not find this issue dispositive.  Rather, basic tenets of contract interpretation, recognized in Louisiana and elsewhere, control the outcome of this case.

4

League for use as a tuberculosis treatment facility in 1818 (the "Frame Donation"). The donation included the condition that "if said property should cease to be used for a tuberculosis sanitarium or camp or some other equally charitable purpose, the same should revert back to the donor." *Id.* at 686. Due to innovations in the treatment of tuberculosis, need for facilities, such as the one constructed pursuant to the Frame Donation, waned. In 1972, the tuberculosis treatment facility was closed, but the facility was renovated and approximately half of the property was used as a halfway house for recovering substance abusers in 1973. However, the remainder of the property was not used for a charitable purpose but, instead, contained a park, nature trail and an overseer's house. Colonel Ardis's successors filed suit to revoke the donation as to that portion of the property which was not being used for a charitable purpose for failure to comply with the condition of the donation.

The court rejected the Ardis heirs' argument. The court concluded that, because the donee fulfilled the condition by converting a portion of the land into a halfway house, the entirety of the property remained with the donee. *Id.* at 691. The court stated that "[t]he condition does not require that every square inch of the property be occupied by buildings and structures used in pursuit of the purposes of the donation." *Id.* at 690. Rather, a good faith use of a substantial portion of the property for its intended use fulfills the condition for the entirety of the property and prevents revocation. *Id.*

The uncontested facts and the plain terms of the Equilon Lease show that the Lease furthers the purposes of the SPR and, thus, falls squarely within the uses authorized by the Hawthorne Donation even under the most limited interpretation. It is undisputed that Equilon's continuous use of the pipelines, pumps and storage facilities actually enhance the life of these

5

facilities for the purposes of the SPR. It is also undisputed that the Government is still using facilities on the Hawthorne property for transportation and storage of crude oil as part of the SPR. The Equilon Lease provides that, in the event of an emergency, the Government must be given full use of the pipeline for SPR purposes. Further, the Government retained the right to conduct SPR system tests and to monitor and inspect the condition of the pipeline in the Equilon Lease. The arrangement with Equilon also gives the Government access to the pipeline for SPR purposes at a substantially reduced cost by requiring Equilon to maintain the pipeline at its own expense. Under these facts, we hold that the Equilon Lease furthers the purposes of the SPR and satisfies the terms of the Hawthorne Donation even under the strictest interpretation of that document.

### III.

Even if the Equilon Lease did not serve the purposes of the SPR, we are satisfied that the Hawthorne Donation does not restrict the Government's ability to lease the servitude for commercial purposes. This court has issued decisions in two strikingly similar cases, holding that a reference that a servitude is for the purpose of the SPR does not impose an additional limitation on the government's interest in the property donated or taken. *See LaFargue v. United States,* 193 F.3d 516, (5th Cir. 1999) (unpublished), No. 98-30657, (5th Cir. filed August 16, 1999, on rehearing October 13, 1999) and *Canova v. Shell Pipeline Co., supra.* These two decisions rely on the fact that the conveyance language used in the donation and in the declaration of taking expressly allowed the assignment of the servitude. The Hawthorne Donation contains a similar expression of assignability, thus the principles relied upon in *LaFargue* and *Canova* are equally applicable here.

6

The closest case factually to today's case is the unpublished opinion in *LaFargue v. United States.*[3]  In *LaFargue*, the landowner donated a servitude to the United States with language regarding its use for the SPR similar to that contained in the Hawthorne Donation.  Like the Hawthorne Donation, the LaFargue donation also contained language allowing the assignment of the servitude and providing certain contingencies by which the servitude would terminate.  The government sold the leg of the pipeline that crossed the LaFargue's property and retained no continued right of use related to the SPR.  The LaFargues argued that this constituted an abandonment of the servitude or the occurrence of a resolutory condition causing the servitude to revert to the landowner.  The district court rejected this argument, and the *LaFargue* panel affirmed.

Although the donation contained statements of purpose regarding the SPR similar to that in the Hawthorne Donation, the *LaFargue* panel agreed with the district court that the donation did not provide for termination or reversion in the event the government ceased operation of the pipeline as part of the SPR.  As with the Hawthorne Donation, the donation in *LaFargue* expressly provided that the right-of-way was assignable and also listed express grounds for termination which did not include use of the pipeline for purposes other than the SPR.  The *LaFargue* court reasoned that characterizing the sale of the pipeline as an abandonment would render the servitude unassignable.  *LaFargue v. United States,*  No. 98-30657, slip op. at 8.

The above reasoning of the *LaFargue* court applies with equal force to this case. Interpreting the contract to limit the use of the servitude to SPR purposes runs afoul of the basic

---

[3]  We acknowledge that, because it is an unpublished opinion, *LaFargue* is not binding precedent.  We nonetheless find its reasoning persuasive.  5th Cir. R. 47.5.4.

7

rules of contract interpretation. "Under Louisiana law, each provision of a contract must be read in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.* at 9. (Citing La. Civ. Code art. 2050 and *Heirs of Primeaux v. Erath Sugar Co.*, 484 So.2d 717, 720-21 (La. App. 3d Cir. 1989)). A contract should be interpreted so as to avoid neutralizing or ignoring a provision or treating it as surplusage. *Id.* (Citing *Lambert v. Maryland Casualty Co.*, 418 So.2d 553, 559 (La. 1982)).

When we read the Hawthorne Donation in its entirety, no implied reversionary interest is triggered when use of the pipeline changes. To read the Hawthorne Donation to prohibit the pipeline to be used for purposes other than the SPR would render the assignability clause mere surplusage. Such a construction violates basic tenets of contract interpretation recognized in Louisiana and elsewhere.

We reached the same conclusion in *Canova v. Shell Pipeline Co., supra,* applying federal common law. In *Canova,* the United States acquired easements for the SPR by exercising its power of eminent domain. The easements in *Canova* were also used for the Bayou Choctaw Pipeline and are subject to the Equilon Lease. The Declaration of Taking in *Canova* describes the interest taken as "a perpetual and assignable easement and right-of-way . . . for the location, construction, operation, maintenance, alteration, repair and patrol of the multipipelines in the establishment, management and maintenance of the Strategic Petroleum Reserve." *Id.* at 756. Again relying on the fact that the right-of-way was expressly made assignable, we found that the reference to the SPR did not restrict the use of the pipeline. "Because no entity but the government can use the pipeline for SPR purposes, a restriction on use to that end would render virtually meaningless the clause authorizing assignment." *Id.* at 758. Accordingly, the easement

8

in *Canova* was not limited in scope to SPR purposes.

Applying the reasoning of *LaFargue* and *Canova* to the undisputed facts of this case, we conclude that because the Hawthorne Donation expressly allowed the Government to assign the assets donated, the Government was authorized to grant the Equilon Lease. It follows that Equilon is authorized to use the pipeline and is not a trespasser. Accordingly, the district court's judgment is AFFIRMED.