**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

NO. CW 07-1483

JODY DWAYNE KOPNICKY

VERSUS

CITGO PETROLEUM CORPORATION, ET AL.

CONSOLIDATED WITH

JONATHAN ALEX, ET AL.

VERSUS

CITGO PETROLEUM CORPORATION, ET AL.

REHEARING GRANTED

This matter first came before this court when CITGO Petroleum Corporation (CITGO) filed an application for supervisory writs, seeking to have a trial court judgment finding it in contempt of court set aside. The underlying litigation arises from a June 2006 chemical spill that occurred at the CITGO facility in Calcasieu Parish, Louisiana. The plaintiffs in these consolidated cases seek to recover damages they claim to have sustained as a result of the chemical spill. The issues now before this court relate to matters that occurred in the discovery process. By a judgment dated January 8, 2008, this court vacated the trial court's order finding CITGO in contempt of court and set aside the order compelling specific attorneys to provide their clients' names. The matter is now before us on an application for rehearing filed by the plaintiffs. For the following reasons, we grant the plaintiffs' motion for rehearing, vacate our prior judgment, and enter a new judgment as explained below.

1

On April 16, 2007, the plaintiffs served CITGO with a notice of corporate deposition, listing twenty-five items or areas for examination. The notice further requested that, pursuant to La.Code Civ.P. art. 1442, CITGO "designate one or more officers, directors, managing agents, or other persons who consent to testify and/or are competent to testify on its behalf, regarding the [twenty-five areas of examination], as well as to such other relevant information as the witness may possess" and to produce any and all documents relating to these twenty-five areas.

CITGO responded to the notice by producing its environmental manager, David Hollis, as its Article 1442 designee. On April 25, 2007, the plaintiffs deposed Mr. Hollis. In that deposition Mr. Hollis testified concerning ten of the twenty-five areas of examination listed in the original notice. However, he could provide no information concerning the remaining fifteen areas.

The day after taking Mr. Hollis' deposition, the plaintiffs filed a second notice of deposition seeking discovery of information regarding the fifteen items not addressed the day before. In their notice, the plaintiffs again requested that, pursuant to La.Code Civ.P. art. 1442, CITGO "designate one or more officers, directors, managing agents, or other persons" to be deposed on these remaining areas, and to produce all documents related to these areas.

CITGO responded to this filing on August 17, 2007, by filing a motion seeking to limit the scope of discovery and to quash the Article 1442 deposition. In its motion, CITGO asserted that it was facing hundreds of legal actions involving thousands of plaintiffs in both state and federal forums, and that the United States Department of Justice had begun an investigation to determine if federal laws were violated in the incident. Asserting that because its employees had become the subject of the federal investigation, and because these employees might require separate

2

criminal counsel and might find it necessary to invoke the self-incrimination provisions of U.S. Const. amend. V during any deposition testimony, CITGO sought a stay order from the trial court prohibiting the plaintiffs from taking the testimony of any person under criminal investigation. However, CITGO did not identify these persons or explain how an individual employee's testimony could be subject to criminal inquiry.

At a September 24, 2007 hearing on its motion, CITGO presented no evidence in support of the assertions in its August 17 motion despite the fact that the trial court gave the litigants specific evidentiary matters it would consider in determining whether a protective order should be issued.[1] Instead, CITGO's counsel asserted that the corporation would be hamstrung in responding to the litigation or in addressing settlement issues because of the federal criminal consequences of anything it might do in civil litigation. However, when questioned by the trial court, counsel for CITGO acknowledged that he had no information that anyone with CITGO had received a target letter from the federal prosecutors.

During the proceedings, counsel for CITGO deferred to a number of criminal defense attorneys who were present in the court room during the hearing.[2] Although their status in the litigation lends little to the resolution of the issue now before us, one of the defense attorneys, Mr. Kevin Stockstill, acknowledged that his twenty-five clients were specific persons notified by CITGO that they were its Article 1442

[1]The trial court suggested that it would consider a protective order after considering three basic areas: (1) exactly how the criminal investigation related to the pending civil proceedings; (2) whether those who may be deposed are targets of the criminal investigation; and (3) whether the subject matter of the suit suggested a violation of state or federal criminal law.

[2]The record does not establish how many spectator attorneys were present at the hearing. It does make clear, however, that none of the attorneys who addressed the trial court were counsel of record for any party then before the court, that none would identify his client, and that none were under oath when presenting information to the trial court. Furthermore, neither counsel for CITGO nor any of the criminal defense lawyers who addressed the court suggested that any of those under criminal investigation would not consent to testify on behalf of CITGO.

3

designees, although counsel for CITGO never made such an assertion.[3]

In denying CITGO's request for a protective order, the trial court stated:

Normally, when I usually get these situations where the law enforcement agency is asking that we hold off because they're conducting an investigation is normally what happens. And it's not happening in this case. The defendants are asking for this. Have you found that case? Where's it at? Give it to me. I know it's not important what the facts are, but a lot of times - - it's not a real big case. Okay, in this case, this _Thibodeaux vs. Thibodeaux_ this 538 So.2d 683, and it's a Third Circuit Court of Appeal Louisiana Case. In this case, there was apparently a questioning of a witness. And that witness took the fifth and the Court of Appeals granted the writs and held that the District Court was to review each question to which the defendant exercised his privilege against self-incrimination in order to determine if privy was properly invoked. The trial court acted improperly in ordering defendant to answer all questions propounded at oral deposition and written interrogatory, insofar as, questions could have resulted in defendant incriminating himself in criminal activity. So, it seems like it comes to the trial judge's responsibility to determine whether, or not, at some point, whether, or not, the question that they he took the fifth on could have involved some criminal conduct. That's what it seems to say. Which I don't have a problem with that. I thought that was the law anyway. Now, it was the good ol' Third Circuit. They're pretty compelling over Carter what the Third Circuit says. But anyway, this is what I'm going to rule. Number one, protective order is denied. It's denied because it has not been established there is a serious, while there is apparently inquiries, some sort of investigation of some Citgo employees. Even some that worked the Lake Charles area plant. And it has not been established it's to the point where folks have received target letters or folks are even questioned with a lawyer. Or even that there has been arrangements made to question about some type of criminal conduct. While there may be some inter relation between the civil case and the criminal case, like Mr. Ieyoub said there might be, I'm not at a point where I can make a judgment call as to whether, or not, any answer at a 1442 deposition would in fact violate fifth amendment of the person being questioned. So, I'm basically just going to deny the order. The law enforcement agency doesn't seem to be too concerned about it. I'm not even convinced this is a serious, genuine investigation. But I will do this. When the 1442 deposition is had and those people are identified by the defendant for the plaintiffs opposed. And at some point, if in fact they take the fifth, then the Court will review, on motion of the plaintiff, will review those questions to determine whether, or not, they, in fact, they may expose the witness to criminal prosecution, okay? But we're going forward with the deposition. We're going forward with

---

[3]As will be seen hereafter, the identity of these twenty-five employees immediately became the focus of the hearing, although nothing exists in the record to suggest the status of the other employees who had obtained criminal defense counsel.

the case and the best way to get around getting in people's business, or letting the feds get in your business is to settle the case. But now if you don't want to settle the case, the plaintiff has a right to prepare their case because they have the burden of proof. And I will deal with these fifth amendment questions at the appropriate time. But I can assure you I will not take advantage of that Court's comments about looking at the question. I mean, a witness that takes the fifth on every question, take the fifth, take the fifth, take the fifth, just to waste time or delay the process of these proceedings, then that person might not - - if I find it was a frivolous use of the fifth, or if it was done purely to retard the prosecution of this case, or that it was done to make a mockery out of the deposition process, then that person won't have to worry about the feds. That person is going to jail by me. But I will hear it. If it's a legitimate fifth case, if it's something that I think it was reasonable for them take the fifth on, even though I don't agree that it would expose them to criminal conduct, I will look at it and make a decision on it. But if I think it's just a frivolous way of getting around answers or proceeding with this case, then it's in contempt of court in my opinion and they're going to go to jail. All right? And they're not going to have to worry about the feds, we're going to put them in the Calcasieu Parish jail.

In setting the parameters for compliance, the trial court said:

All right, why don't we do this. Why don't we give the defense, today is the 24th. Why don't we give the defense until October 12th, to identify those people they plan to offer for 1442 deposition. And to schedule a deposition for at least, whatever number you all agree that you can depose on or before the 17th day of October. Now, if it's so many people that you can't take care of it, you'll have to get together and do what you can. And then we'll reschedule the rest. But I would like to see a deposition had on the 17th, a 1442 had on the 17th. I feel like the more you all talk, the more information is transferred, the more likely this case will settle. Otherwise, you're going to be around, you're going to be waiting on the feds to do something and I might be dead and gone before the feds do something.

Thus, in its reasons for judgment, the trial court did not single out the twenty-five individuals purportedly represented by the criminal defense lawyer referred to above, or for that matter any other unnamed employee of CITGO. Instead, the trial court simply ordered that CITGO comply with the requirements of La.Code Civ.P. art. 1442 and identify the appropriate person to testify concerning the matters remaining. The judgment arising from this hearing merely addresses the general obligations of CITGO and does not specify any particular person. It provides in pertinent part:

5

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, JODY DWAYNE KOPNICKY, and against defendant, CITGO PETROLEUM CORPORATION, denying its Motion to Limit Initial Scope of Discovery and Motion for Protective Order Regarding Scope of Discovery and Quash 1442 Deposition;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that CITGO PETROLEUM CORPORATION provide counsel for plaintiffs, the names of all witnesses who will testify in response to plaintiffs' Notice of 1442 Deposition no later than October 12, 2007;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that CITGO PETROLEUM CORPORATION provide counsel for plaintiffs, a date and location for the 1442 Deposition by October 12, 2007 and the 1442 deposition be held no later than October 17, 2007.

The trial court signed this judgment on October 1, 2007.

A subsequent judgment of the trial court extended the time CITGO was to produce the witness list to October 26, 2007, and extended the deadline for conducting the deposition to November 6, 2007. This judgment, which was signed on October 31, 2007, provided:

IT IS ORDERED, ADJUDGED AND DECREED that defendant, CITGO PETROLEUM CORPORATION, is to provide a list of witnesses responsive to plaintiffs' Article 1442 Deposition no later than October 26, 2007;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Article 1442 deposition take place by November 6, 2007;

Thus, it is clear that, at this point of the litigation, the trial court did not order CITGO to divulge the identity of the twenty-five individuals referred to in the September 24, 2007 hearing. It merely ordered that CITGO produce the appropriate La.Code Civ.P. art. 1442 designee. However, the record establishes that CITGO chose to, at best, circumvent the order or, at worst, ignore the order.

When the November 6, 2007 deposition took place, CITGO identified its designees as Mr. Hollis for thirteen of the fifteen remaining topics of discovery, and

Phillip Andrews for the remaining two topics.[4] With regard to Mr. Hollis' testimony, nothing was accomplished.

When questioned concerning those areas to be addressed by his testimony, Mr. Hollis acknowledged that his employment duties had not changed since his last deposition wherein he professed to be unable to address these same areas. Additionally, he testified that since his last deposition, the primary individuals with whom he had communicated concerning the litigation were CITGO's attorneys, and then only for three to four hours the day before the deposition. On the one hand, he claimed to have conducted no independent investigation of the facts surrounding the subject of the litigation, yet on the other hand, and on his private counsel's advice,[5] Mr. Hollis declined to answer any questions concerning his involvement or lack of involvement in any criminal investigation. He did acknowledge that he had taken part in casual conversations with other employees working in the unit involved in the chemical spills, but declined to identify those individuals, professing not to remember them because "[they were] not people [he] generally [knew]." In other words, he provided absolutely nothing in the form of significant discovery.

In response to their production obligation, CITGO provided the plaintiffs on the day of the deposition with twelve boxes of documents marked "Confidential."[6] Counsel for the plaintiffs declined to accept the documents as satisfactory discovery, given the lack of verification that any of the documents properly fit the definition of

---

[4]The designation of Mr. Andrews is not at issue in this phase of the litigation.

[5]As noted by counsel for the plaintiffs, Mr. Hollis' private counsel was not counsel of record in the litigation. Yet he continuously asserted objections for the record in the litigation.

[6]The deposition transcript contains a discussion concerning these documents. In that discussion, counsel for CITGO was unable to state whether the documents provided duplicated prior production, whether all or some were marked "Confidential," who marked the documents as "Confidential" and/or why they were so marked, and whether the documents had been turned over to any other entity. In other words, counsel for CITGO seemed to have little or no knowledge of the content of the discovery produced in this regard.

confidentiality and the fact that there existed no showing that other documents may or may not have been withheld as privileged. Despite being submitted as the individual capable of providing information on the thirteen areas these documents referred to, Mr. Hollis could not provide any information concerning the documents' content. In fact, when questioned concerning the content of a small file he brought with him, Mr. Hollis acknowledged that he did not assemble the material in the file and could not identify the person who did. Furthermore, when questioned concerning the specific fifteen categories about which he was designated to testify, Mr. Hollis provided little direct testimony and acknowledged that, on most of these issues, he was not the most knowledgeable individual at CITGO to address the subject. When the plaintiffs' counsel attempted to elicit the names of those more knowledgeable, that question was met by an objection from CITGO's counsel. Needless to say, the deposition's end result was not considered satisfactory to the plaintiffs.

On November 9, 2007, and using Mr. Hollis' own testimony that there were "people at CITGO with more knowledge" than he on the discovery subjects at issue, the plaintiffs filed another motion to hold CITGO in contempt and to have the corporation sanctioned for its failure to provide them with an appropriate designee pursuant to La.Code Civ.P. art. 1442. The trial court heard this motion on November 16, 2007, and it is the judgment rendered at that hearing which is the basis for the current supervisory writ application.

At the November 16, 2007 hearing, counsel for CITGO acknowledged Mr. Hollis' admission at the November 6 deposition that others were better qualified than he to testify. He also acknowledged that while CITGO employees had received subpoenas to testify before a federal grand jury, none had received a federal investigation target letter. Still, despite the fact that no employee had been designated

8

as a target for the federal investigation, he asserted to the trial court that each employee had retained criminal counsel.[7]

After viewing portions of Mr. Hollis' November 6 deposition; listening to the testimony of Dr. Charles O. Bettinger, a forensic economist; and considering the arguments of counsel for both sides, the trial court found CITGO in contempt of court. Based on that finding, the trial court then ordered CITGO to pay a $20,000.00 attorney fee award to the plaintiffs and to pay all of the plaintiffs' costs associated with the taking of the deposition. With regard to the contempt citation, the trial court ordered that CITGO pay $50,000.00 into the registry of the court as a fine for its prior failure to comply and pay $10,000.00 per day, from November 20, 2007, until it fully complied with the former court order. It is at this point that the trial court erred by bringing into its judgment an element not a part of its prior court order.

When asked by CITGO's counsel what compliance was required, the trial court stated that it must "[c]omply with the names of these 25 people." Referring to the September 24, 2007 hearing, the trial court explained:

> But all you have to do is give me those 25 names; it's the same 25 people that Stockstill said he had and he identified; the same people everybody's talking about they know exist, that they got subpoena letters, and it's probably the same people that's been subpoenaed by the Feds, and the same people that got target – if they got target letters, but certainly they were subpoenaed by the Feds, and they've been talked to by the Feds about this criminal complaint. And so we will – moreover, any deposition taken of these people will be confidential and be under seal of the Court until further orders of the Court.

When CITGO's counsel inquired further concerning the requirement that the deposition testimony be under seal, the trial court stated the following:

> It will be under seal – the names will be under seal, but they're going to be deposed. I'm going to go through those names, based on the information you give me, and decide which ones they can depose, if not

---

[7]Although CITGO professes to have no knowledge of how these individuals retained and paid for individual criminal defense counsel, the record strongly implies otherwise.

9

all of them. But I'm going to go through it and give you a chance to tell me why. And I'm mainly interested in people that have direct knowledge about what happened on this spill date and leading up to the spill, the cleaning up of the spill, and the operations of the mechanics of the system where the spill was caused at. And, I'm thinking these are the same people the Feds done already checked out and sent subpoena letters, and maybe a target letter. And I'm doing this because the lawyers are officers of the Court. The lawyers represented to the Court that they had 25 people, and the lawyers are holding these people back for whatever reasons, and the lawyers are directly defying the Court and are in contempt at this time. What I'm going to do about that contempt is going to be based on whether or not they will be willing to comply at this point on. So, that's the order of the Court.

The trial court also ordered that Mr. Stockstill and Mr. Jeff Bedmar, the in-house counsel for CITGO, appear in court on November 28, 2007, and either divulge the names of the twenty-five people or explain why they should not do so. The trial court said that if these two attorneys—neither of whom were enrolled as counsel in this suit—did not appear on November 28 or turn over the names prior to that date, they would be arrested.

**OPINION**

In its supervisory writ application, CITGO asserted four specifications of error: (1) the trial court erred in finding that it had not fully complied with its obligation to produce the appropriate designee pursuant to La.Code Civ.P. art. 1442; (2) the trial court erred in awarding sanctions against it where the corporate representative was made available and where there was no indication that the designee was unable to offer proof of the issues on which he was to be deposed; (3) the trial court erred in requiring CITGO to identify as its corporate designee "persons who have not consented to testify on the company's behalf and who, because of a federal criminal investigation, have confirmed they would likely invoke their right against self-incrimination if compelled to testify thereby raising an adverse presumption against the company;" and (4) the trial court erred in awarding a daily penalty until it was in

10

full compliance.

When first presented with this supervisory writ application, this court rendered

the following judgment:

> **<u>WRIT GRANTED AND MADE PEREMPTORY:</u>** We find that the trial court erred in finding the Relator in contempt of court for failure to comply with its orders regarding the Plaintiffs' demand for a La.Code Civ.P. art. 1442 deposition. The Relator was ordered, on two occasions, to provide "one or more" persons of its choice to appear for the deposition, and the Relator designated and provided such persons in compliance with these orders.
>
> The Plaintiffs' Notice or Re-Notice of Deposition did not demand that any specific person or persons be deposed and neither were any such persons listed or mentioned in the orders of the trial court regarding these notices. Further, no additional notices for deposition of these other persons have been made by the Plaintiffs and there are, therefore, no grounds for prospectively holding [the criminal defense counsel who addressed the trial court at the September 24, 2007 hearing], [CITGO's in-house counsel], or the Relator in contempt for failure to so provide such names.
>
> Accordingly, the ruling of the trial court finding the Relator in contempt of court is hereby reversed, vacated and set aside. Additionally, we set aside the order compelling the specific attorneys to provide their client's names, and the case is remanded for further proceedings consistent with this opinion.

In reaching our previous decision, we placed much emphasis on the trial court's

fixation on the names of the twenty-five individuals whose identity arise only through

the statement of their defense counsel, Mr. Stockstill, at the September 24, 2007

hearing. Upon further review, we find that our emphasis on that requirement caused

us to err in the disposition of some of the issues before us.

Louisiana Code of Civil Procedure Article 1442 provides:

> A party may in his notice name as the deponent a public or private corporation or a partnership or association or governmental agency and designate with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify. The persons so designated shall testify as to matters known or reasonably available to

11

the organization. This Article does not preclude taking a deposition by any other procedure authorized in this Chapter.

As pointed out by CITGO in its brief to this court, La.Code Civ.P. art. 1442 is patterned after Rule 30(b)(6) of the Federal Rules of Civil Procedure. That provision's purpose is to streamline the discovery process by placing the burden of designating and producing competent witnesses upon the party from whom discovery is requested. *See Black Horse Lane Assoc., LP v. Dow Chemical Corp.*, 228 F.3d 275 (3d. Cir. 2000). As long as the deposing party sets out with reasonable particularity the matters on which examination is requested, it is incumbent upon the requested party to produce witnesses able to testify as to matters known or reasonably available to the organization. *Id.* Furthermore,

> When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, readily identifiable witness, than the appearance is, for all practical purposes, no appearance at all.

*Id.* At 303 (quoting *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 197-98 (5th Cir. 1993)).

In the matter now before us, the plaintiffs timely made application under La.Code Civ.P. art. 1442, requesting that CITGO designate the person to testify to the matters raised in the notice of deposition. When Mr. Hollis, CITGO's designee, was unable to testify to fifteen of the twenty-five areas noticed in the deposition, the plaintiffs sought a new designation by CITGO. CITGO responded by attempting to obtain a protective order eliminating all discovery by the plaintiffs. The trial court denied CITGO this relief and CITGO sought no review of this ruling. The judgment arising from this ruling required that CITGO "provide a list of witnesses responsive to plaintiffs' Article 1442 Deposition." CITGO responded to this order by

12

resubmitting Mr. Hollis as its designee. As previously stated, Mr. Hollis provided little or nothing in the way of discovery of information addressing the thirteen areas for which he was submitted.

Counsel for CITGO asserted at the November 16, 2007 hearing, that the "sole reason" for the parties being in court was that the plaintiffs "disagree[d] with the designees" provided by CITGO. To be more precise, the sole reason for the parties returning to court on the discovery issue was the designation by CITGO of Mr. Hollis as the continued representative in the second deposition. While the trial court became sidetracked on other issues not pertinent to this particular issue, it is clear that the trial court agreed with the plaintiffs that CITGO's designation of Mr. Hollis to testify in the second deposition about issues he had previously been unable to testify to constituted a failure on CITGO's part to comply with the requirements of La.Code Civ.P. art. 1442.

CITGO acknowledges that there exist others within its corporate structure that are more knowledgeable about the issues in dispute than Mr. Hollis but asserts that it complied with the "mandatory provisions" of the trial court's order with regard to an Article 1442 designation. Citing *City of Monroe v. Evans*, 385 So.2d 912 (La.App. 2 Cir. 1980), CITGO seems to argue that, while it may not have complied with the spirit of the court order, it did comply with the letter of court order—and that compliance with the letter of the court order is sufficient. CITGO furthermore cites to federal jurisprudence interpreting Rule 30(b)(6) of the Federal Rules of Civil Procedure to the effect that, while a company must prepare its representative to give complete, knowledgeable, and binding answers in his or her deposition testimony, the person so designated need not be the individual within the company that is the most knowledgeable on the subjects at issue. *Rodriguez v. Pataki*, 293 F.Supp.2d 305, 311

13

(S.D.N.Y. 2003), *aff'd*, 293 F.Supp.2d 315 (S.D.N.Y.) ("[I]t is settled law that a party need not produce the organizational representative with the greatest knowledge about a subject; instead, it need only produce a person with knowledge whose testimony will be binding on the party."). While we agree with the legal concepts raised by CITGO, we conclude that sending someone such as Mr. Hollis, who is unable or unwilling to provide any information, makes discovery absolutely useless. Thus, we find that CITGO complied with neither the letter nor the spirit of the requirements of La.Code Civ.P. art. 1442. Therefore, we find no merit in CITGO's first two specifications of error.

While CITGO does not appear to contest the trial court's order that it pay $20,000.00 in attorney fees and reimburse the plaintiffs for the costs of the deposition activity, we find that the imposition of these sanctions was proper. Louisiana Code of Civil Procedure Article 1471 governs the sanctions available for failure to comply with an order compelling discovery. It provides in pertinent part that, unless the failure was "substantially justified" or an award of expenses is unjust, the trial court shall order the opposing party "to pay the reasonable expenses, including attorney's fees, caused by the failure" to comply with the discovery order. "The trial court has much discretion in imposing sanctions for failure to comply with discovery orders, and his choice of sanctions will not be reversed absent an abuse of discretion." *Case v. Prudential Prop. & Cas. Ins. Co.*, 98-1848, p. 6 (La.App. 3 Cir. 5/5/99), 736 So.2d 300, 303. Thus, we find no error in this award.

In addition to awarding attorneys fees and expenses as provided for in La.Code Civ.P. art. 1471, the trial court also found CITGO to be in contempt of court for its failure to comply with the discovery order. Such dual punishment is provided for in La.Code Civ.P. art. 1471(4), which provides that in addition to other relief provided

14

for in other sections of La.Code Civ.P. art. 1471, the trial court may issue "an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination." While we find no error in the trial court finding that CITGO was in contempt of court for failure to comply with its discovery order, we do find merit in CITGO's complaint that the trial court erred in requiring CITGO, as a means of absolving itself from contempt of court, to produce the names of the twenty-five individuals referred to by the criminal defense counsel in the September 24, 2007 hearing, and in imposing a penalty for failure to do so.

"Wilful disobedience of any lawful . . . order . . . of the court" is a constructive contempt. La.Code Civ.P. art. 224(2). The maximum fine that can be imposed for a party's failure to comply with a discovery order is $500.00. La.R.S. 13:4611(d). Thus, the penalty imposed for the contempt of court finding is excessive and must be set aside.

Furthermore, for some reason not explained in the record before us, after determining that CITGO was in contempt of its prior discovery order the trial court became focused on the identity of these twenty-five individuals despite the fact that the plaintiffs never raised their identity as an issue.[8] Thus, when the trial court ordered that CITGO divulge the identity of these twenty-five individuals, it was ordering relief not previously requested or ordered. We find this to be error as well. The judgment signed on October 1, 2007, only required that CITGO "provide counsel for plaintiffs the names of all witnesses who will testify in response to plaintiffs' Notice of 1442 Deposition." It does not single out the twenty-five individuals represented by Mr. Stockstill, the criminal defense attorney who addressed the trial

---

[8]In fact, these twenty-five individuals are those represented by a single retained criminal defense counsel. The record contains numerous references to other unnamed individuals who are represented by other criminal defense attorneys.

15

court on September 24, 2007. Additionally, the motion that the plaintiffs filed on November 9, 2007, does not have as its basis for relief the identity of these individuals. Because we find that the trial court erred in ordering CITGO to divulge the identity of these twenty-five individuals, it follows that CITGO cannot be assessed a daily penalty for failure to comply with that portion of the judgment.

In our prior judgment, we set aside the portion of the trial court's ruling stating that Mr. Bednar and Mr. Stockstill would be held in contempt if they did not appear in court on November 28, 2007, at 9 a.m., to either reveal the names of the twenty-five employees or explain why they would not do so. But that issue is not properly before us. This appeal is only from the ruling of November 16, 2007, finding CITGO in contempt of court.

## DISPOSITION

For the foregoing reasons, we grant the plaintiffs' motion for rehearing, vacate our judgment dated January 8, 2008, and enter the following disposition:

> **WRIT DENIED IN PART, GRANTED IN PART, AND MADE PEREMPTORY:** We find that the trial court did not err in finding CITGO Petroleum Corporation in contempt of court for failure to comply with its orders regarding the plaintiffs' demand for a La.Code Civ.P. art. 1442 deposition. CITGO Petroleum Corporation was ordered to provide "one or more" persons of its choice to appear for the deposition, and chose to submit an unqualified designee to give testimony on the issues presented. Thus, CITGO Petroleum Corporation did not comply with the orders of the trial court.
>
> We uphold the trial court's award of attorney fees and costs for CITGO Petroleum Corporation's failure to comply with the Article 1442 request because CITGO Petroleum Corporation does not contest this award. But we find that the trial court erred in imposing monetary penalties for CITGO Petroleum Corporation's failure to identify the twenty-five employees referred to by Mr. Kevin Stockstill at the September 24, 2007 hearing. We do not consider the issue raised by the trial court ordering Mr. Kevin Stockstill and Mr. Jeff Bednar to appear in court on a future date to either reveal the names of the twenty-five employees or offer grounds why they should not do so, finding that this issue is not properly before us.

16

SULLIVAN, J., would deny the rehearing.